No. 95,535

FLORES RENTALS, L.L.C., A Texas Limited Liability Company, *Appellant*, v. ERNESTO FLORES, *Appellee*.

(153 P.3d 523)

Opinion filed March 16, 2007.

*David P. Troup*, of Weary Davis, L.C., of Junction City, argued the cause and was on the brief for appellant.

*Peter Charles Rombold*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, and *Mark Edwards*, of the same firm, was on the brief for appellee.

The opinion was delivered by

LUCKERT, J.: This is an appeal from an order of the district court granting defendant Ernesto Flores' motion to disqualify the law firm of Weary Davis, L.C., from serving as counsel for plaintiff Flores Rentals, L.L.C., or its owner Rosemary Flores. The issue

we consider on appeal is whether the district court's order of disqualification is an appealable order under the collateral order doctrine, a narrow exception to the general rule that only final orders may be appealed as a matter of right. We conclude that the collateral order doctrine does not allow an appeal of an order disqualifying counsel when the order has been entered because the attorney may be a witness in the litigation.

The question of potential disqualification of the Weary Davis law firm arose after an attorney in the firm, Steven R. Struebing, was identified as a potential witness. Ernesto raised the issue by filing a motion to disqualify the Weary Davis law firm. In his written motion and in his arguments to the district court, Ernesto alleged that Struebing had previously represented Ernesto, Rosemary, and Flores Rentals in certain real estate transactions. Ernesto essentially asserted that he was in partnership with Rosemary and that any advice given by the Weary Davis law firm was in furtherance of their partnership. Ernesto asserts that determination of ownership of the partnership is a critical issue in this case in which Flores Rentals, through its attorneys at Weary Davis, argues Ernesto converted money or assets belonging to Flores Rentals for his personal use or to give as gifts to others. In a related suit filed in Bexar County, Texas, Ernesto has requested a declaratory judgment regarding his alleged one-half ownership in Flores Rentals.

It is uncontroverted that Ernesto had contact with the Weary Davis law firm during the process of inquiring into three different parcels of real estate which were potential sites for Flores Rentals to operate franchised locations of Aaron's Rents and Sells, a national retail and rent-to-own furniture company. Working with Ernesto, Struebing provided legal services related to one tract of real estate which was ultimately determined not to be a suitable size for the Aaron's store. In a second phase of events involving Struebing, Ernesto found property in Junction City, Kansas, which was owned by Storage Properties, Inc., a corporation of which Struebing was a principal shareholder and vice-president. Ultimately, in April 2002, Flores Rentals entered into a lease agreement with Storage Properties. The lease agreement and guarantee were

drafted by Struebing. Per Storage Properties' request, both Rosemary and Ernesto signed themselves as guarantors.

Then, in the spring of 2003, Flores Rentals began investigating a location for an additional Aaron's franchise store. This led to Ernesto contacting Struebing for assistance yet again. Struebing negotiated a lease for property in Liberal, Kansas; the lease was drafted and completed. Again, Ernesto and Rosemary were both listed as guarantors on the lease.

Around this same time period, Rosemary terminated Ernesto's involvement with Flores Rentals. Flores Rentals filed the present action against Ernesto in Geary County District Court in April 2005, alleging that Ernesto was hired as manager of the Aaron's store in Junction City and, during his time of employment, wrongly converted money or assets belonging to Flores Rentals.

During discovery, Ernesto's Texas counsel wrote a letter stating that Struebing would need to be called as a witness in both the Texas and Kansas lawsuits and suggesting, therefore, that the Weary Davis law firm might have to withdraw from the Kansas case. Ernesto's Kansas counsel became aware of the letter the day before Ernesto's deposition and alerted Struebing. Struebing reviewed the applicable Kansas Rules of Professional Conduct (KRPC) and concluded that withdrawal was not required. Struebing prepared a letter to that effect and delivered it to Ernesto's counsel the next morning.

This ultimately led to Ernesto's filing a motion to disqualify Struebing's law firm, Weary Davis, from serving as counsel for Flores Rentals in the Kansas case based upon Struebing being a key witness with regard to the pivotal issue of who owns Flores Rentals.

The district court agreed. The district court found it uncontroverted that the interests between defendant Ernesto and plaintiffs Flores Rentals and Rosemary are substantially adverse to one another. The district court further found that the ownership issue, to which Struebing would testify in Texas, could also have a substantial bearing on the results in the Kansas case. Based upon testimony at the hearing on the motion to disqualify and documentation pro-

vided in the pleadings, the district court determined there was a possibility that Ernesto and Rosemary were in a partnership.

The district court found an issue existed regarding whether the Weary Davis law firm represented Ernesto as a former client, noting that although the law firm denied providing any counsel to Ernesto, it is uncontroverted that Ernesto had numerous contacts with the law firm. The district court determined that, based on their contacts, Ernesto had a substantial relationship with the Weary Davis law firm and that each prong of the requirements necessary before an attorney must be disqualified under KRPC 1.9(a) (2006 Kan. Ct. R. Annot. 421) (Conflict of Interest: Former Client) were satisfied. Further, Ernesto neither provided a waiver to allow the law firm to represent the plaintiff in the Kansas lawsuit, nor did he consent to the law firm's representation of the plaintiff. Therefore, the district court granted the motion to disqualify the Weary Davis law firm as counsel.

After granting Ernesto's motion to disqualify counsel, the district court, at Flores Rentals' request, made findings for an interlocutory appeal pursuant to K.S.A. 60-2102(c). In October 2005, in Court of Appeals Case No. 95,366, Flores Rentals applied under K.S.A. 60-2102(b) for permission to take an interlocutory appeal. The Court of Appeals, however, denied the motion.

In November 2005, Flores Rentals subsequently filed a docketing statement and notice of appeal with the Clerk of the Appellate Courts in the present case. This time, the Court of Appeals issued an order to show cause, directing the parties to show why the appeal should not be dismissed for lack of jurisdiction because, according to the Court of Appeals, "the order appealed from may be interlocutory in nature" and "it is unclear from the appellate file whether final judgment has been entered in this case."

After receiving the parties' responses to the show cause order, the Court of Appeals determined that *Skahan v. Powell*, 8 Kan. App. 2d 204, 653 P.2d 1192 (1982), *disapproved on other grounds Reed v. Hess*, 239 Kan. 46, 716 P.2d 555 (1986), which applied the "collateral order" doctrine to retain the appeal of an order disqualifying counsel, remains controlling law regardless of subsequent United States Supreme Court and Kansas Supreme Court

cases calling into question the viability of *Skahan*. The Court of Appeals further stated that *Parker v. Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, Syl. ¶ 2, 781 P.2d 1099 (1989), suggests that an interlocutory appeal was the only immediate remedy for Flores Rentals.

However, the Court of Appeals declined to read *Parker* as having clearly eliminated the possibility of an appeal as a matter of right after a district court grants a motion to disqualify counsel. Instead, the Court of Appeals ordered the parties to address as the first issue on appeal whether *Skahan* should be reconsidered and whether *Parker* applies to prevent an appeal in this case. The case was subsequently transferred to this court by its own motion.

ANALYSIS

Responding to the order of the Court of Appeals, Ernesto argues that *Skakan* is no longer valid and, because there has been no final judgment in this case, there is no appellate jurisdiction under the holding in *Parker*. Ernesto argues the Court of Appeals must accept an interlocutory appeal or there must be a final order before an order disqualifying counsel is appealable. Flores Rentals, however, argues that *Skakan* can still be applied and under that holding the order disqualifying counsel is immediately appealable as a collateral order.

*Standard of Review*

Whether jurisdiction exists is a question of law over which this court has unlimited review. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005). Exercising this review, an appellate court has a duty to dismiss an appeal when the record discloses a lack of jurisdiction. *Max Rieke & Bros., Inc. v. Van Deurzen & Assocs.*, 34 Kan. App. 2d 340, 342-43, 118 P.3d 704 (2005).

*Basis for Appellate Jurisdiction*

Appellate jurisdiction is defined by statute; the right to appeal is neither a vested nor constitutional right. The only reference in the Kansas Constitution to appellate jurisdiction iterates this principle, stating the Kansas Supreme Court shall have "such appellate

jurisdiction as may be provided by law." Kansas Constitution, Article 3, § 3. The Constitution is silent regarding the Court of Appeals, which is not a constitutional court but rather was statutorily created. In creating the Court of Appeals, the legislature limited its jurisdiction, defining the circumstances under which there is jurisdiction to hear an appeal. As a result, Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute; the appellate courts do not have discretionary power to entertain appeals from all district court orders. See *Meddles v. Western Power Div. of Central Tel. & Utilities Corp.*, 219 Kan. 331, 333, 548 P. 2d 476 (1976); *Henderson v. Hassur*, 1 Kan. App. 2d 103, 105-06, 562 P.2d 108 (1977).

An analysis of appellate jurisdiction begins with K.S.A. 60-2101. K.S.A. 60-2101 provides for civil appeals directly to the Supreme Court only when a final decision of a district court includes a holding that a statute is unconstitutional. K.S.A. 60-2101(b). Otherwise, this court hears civil appeals upon review of decisions of the Court of Appeals or when the appeal is transferred as provided in K.S.A. 20-3016 through K.S.A. 20-3018. K.S.A. 60-2101 also provides for jurisdiction of the Court of Appeals, stating that court has jurisdiction to hear civil appeals from the district court "subject to the provisions of K.S.A. 60-2102, and amendments thereto." K.S.A. 60-2101(a).

K.S.A. 60-2102 lists several bases for an appeal, two of which have been raised by the parties as being potentially applicable in this case. The first, K.S.A. 60-2102(c), was invoked by Flores Rentals when it sought to bring an interlocutory appeal under the provisions of that section and K.S.A. 60-2102(b). An interlocutory appeal under these provisions is not an appeal of right, but rather is subject to the Court of Appeals' exercise of discretion. In this case, the Court of Appeals denied the interlocutory appeal; that decision is not before us for consideration as a basis of jurisdiction.

The second provision cited by the parties is K.S.A. 60-2102(a)(4), which allows an appeal as a matter of right from a "final decision." The term "final decision" has been construed to mean " ' "one which finally decides and disposes of the entire merits of the controversy, and reserves no further questions or directions for the

future or further action of the court.'' " *State ex rel. Board of Healing Arts v. Beyrle,* 262 Kan. 507, 509, 941 P.2d 371 (1997) (quoting *Gulf Ins. Co. v. Bovee,* 217 Kan. 586, 587, 538 P.2d 724 [1975]). This court has noted the term " ' "final decision" is really self-defining. Obviously it is an order which definitely terminates a right or liability involved in the action, or which grants or refuses a remedy as a terminal act in the case.' " *Honeycutt v. City of Wichita,* 251 Kan. 451, 457, 836 P.2d 1128 (1992) (quoting 2 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-2102, Comments [1979]).

Clearly, the district court's order disqualifying Flores Rentals' counsel, entered before trial, is not a final disposition of the case. Nevertheless, Flores Rentals contends that this court has jurisdiction under K.S.A. 60-2102(a) under an exception to the final decision requirement. The exception, the collateral order doctrine, was recognized in *Skakan v. Powell,* 8 Kan. App. 2d 204.

## Skahan v. Powell

In *Skahan,* the district court disqualified an out-of-state attorney from appearing as counsel for the plaintiff in Kansas under Supreme Court Rule 116 (2006 Kan. Ct. R. Annot. 179.). In discussing the issue of whether appellate jurisdiction existed, the Court of Appeals observed that K.S.A. 60-2102(a)(4), which allows appeals from final decisions, is virtually identical to its federal counterpart, 28 U.S.C. § 1291 (1982). The Court of Appeals further noted that federal courts had relied on the collateral order doctrine, an exception to the federal act, to hold that an order disqualifying an attorney from representing a litigant is appealable. 8 Kan. App. 2d at 206 (citing *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 93 L. Ed. 1528, 69 S. Ct. 1221 [1949]). To be collaterally appealable, the order must

"(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." 8 Kan. App. 2d at 206.

See also *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 57 L. Ed. 2d 351, 98 S. Ct. 2454 (1978) (delineating the three conditions).

Adopting and applying the collateral order doctrine, the *Skahan* court held that an order disqualifying a party's attorney is a final decision from which an appeal may be perfected under K.S.A. 60-2102(a)(4). The Court of Appeals noted that the order in Skahan's case conclusively determined the question of whether the plaintiff was to have counsel of his choice or be forced to retain another. In addition, the *Skahan* court concluded that the order resolved an important issue completely separate from the merits of the action and that the order would be effectively unreviewable if an appeal were delayed until a final judgment. The *Skahan* court elaborated:

"If plaintiff is denied counsel of his choice at this stage, a situation is created which cannot be completely rectified. If plaintiff should lose on the merits, he would have an almost insurmountable burden to show his loss was due to the change of counsel. If he should prevail on the merits, the disqualified attorney has no remedy for his loss of reputation and fees." 8 Kan. App. 2d at 207.

In contrast to *Skahan,* the opposite scenario was addressed in *Clemence v. Clemence,* 8 Kan. App. 2d 377, 658 P.2d 368 (1983), where the defendant appealed the district court's denial of the motion to disqualify the plaintiff's attorney. There, the Court of Appeals determined that denying a motion to disqualify counsel is interlocutory in nature because it may be effectively reviewed on appeal from any final judgment. Therefore, the Court of Appeals held the district court's order was not a final order and was not appealable of right. 8 Kan. App. 2d at 377-78 (citing *In re Estate of Richard,* 4 Kan. App. 2d 26, 602 P.2d 122 [1979] [reversing judgment because attorney had violated Code of Professional Responsibility and prejudiced former client; district court erred in failing to remove attorney from case]); see also *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377, 66 L. Ed. 2d 571, 101 S. Ct. 669 (1981) ("An order refusing to disqualify counsel plainly falls within the large class of orders that are indeed reviewable on appeal after final judgment, and not within the much smaller class of those that are not.").

### Richardson-Merrell, Inc. v. Koller

However, after *Skahan* and *Clemence* were decided, the United States Supreme Court in *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 86 L. Ed. 2d 340, 105 S. Ct. 2757 (1985), rejected application of the collateral order doctrine under 28 U.S.C. § 1291 (1982) in the context of orders disqualifying counsel in civil cases.

The Court addressed the many policy reasons which could be advanced for allowing an interlocutory appeal of a motion disqualifying an attorney such as: delay, the impact upon the attorney's reputation, the potential use of the motion for tactical advantage, the party's right to choose counsel, and the potential prejudice and increased cost. Many of these considerations are argued by Flores Rentals. The Court concluded that none of these reasons justified allowing an interlocutory appeal.

Regarding delay, the *Richardson-Merrell* Court observed that one purpose of the § 1291 "final judgment" rule is to avoid delay that inherently accompanies time-consuming interlocutory appeals. When an appellate court accepts jurisdiction of an order disqualifying counsel, the practical effect involves a delay in the proceedings on the merits until the appeal is decided. 472 U.S. at 434. The Court further indicated that a disqualified attorney's personal desire for vindication does not justify an interlocutory appeal; instead, as a matter of professional ethics, the decision to appeal should turn solely on the interests of the client. 472 U.S. at 434-35 (citing American Bar Association Model Rules of Professional Conduct 1.7[b], 2.1 [1985]). In addition, the Court rejected the notion that the use of disqualification motions to harass opposing counsel would constitute an independent justification for an immediate appeal of the disqualification order, noting "[i]mplicit in § 1291 is Congress' judgment that the *district judge* has primary responsibility to police prejudgment tactics of litigants." 472 U.S. at 436. The Court went on to state: "[T]he possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress." 472 U.S. at 436.

After rejecting these policy arguments, the *Richardson-Merrell* Court addressed why an appeal of an order disqualifying counsel

did not comport with the second and third prongs of the collateral order doctrine, the unreviewability and separability requirements. First, the Court noted that this conclusion had been reached in the criminal context in *Flanagan v. United States*, 465 U.S. 259, 79 L. Ed. 2d 288, 104 S. Ct. 1051 (1984), when the Court held that orders disqualifying counsel in criminal cases do not qualify as immediately appealable orders under the collateral order doctrine. Although the United States Court of Appeals for the District of Columbia Circuit in the *Richardson-Merrell* case had tried to distinguish *Flanagan* on various grounds, the Supreme Court found no basis for the distinctions. 472 U.S. at 438-39.

Additionally, the Court stated that "[e]ven apart from *Flanagan*'s analysis, we would conclude that orders disqualifying counsel in civil cases are not 'completely separate from the merits of the action.' " 472 U.S. at 439 (quoting *Coopers & Lybrand*, 437 U.S. at 468). Regarding the third prong of the collateral order doctrine, the Court concluded: "[T]he propriety of the trial court's disqualification order can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal." 472 U.S. at 438.

While recognizing that parties have the option of seeking an interlocutory appeal under 28 U.S.C. § 1292(b) (1982) (requisites for seeking interlocutory appeal), that particular set of facts was not applicable in *Richardson-Merrell*. See *Firestone Tire & Rubber Co.*, 449 U.S. at 378 n.13 (if dissatisfied with district court's decision and absolutely determined that party will suffer irreparable harm, party may seek to have question certified for interlocutory appeal under 28 U.S.C. § 1292[b]). The *Richardson-Merrell* Court ultimately held that the federal Court of Appeals had lacked jurisdiction to address the respondent's appeal.

The *Flanagan* and *Richardson-Merrell* decisions suggest that representation-related orders are either fully reviewable on final appeal, which would violate the unreviewability prong of the collateral order test, or are subject to review for prejudicial error, thus requiring appellate review of the merits of the underlying dispute, which would violate the separability requirement of the collateral order test. See *Devine v. Indian River County Sch. Bd.*, 121 F.3d 576, 580 (11th Cir. 1997).

## Kansas Cases After Richardson-Merrell

In the years following *Richardson-Merrell* and *Flanagan*, Kansas appellate courts have addressed the issue of jurisdiction in cases where parties have appealed orders disqualifying counsel. In the criminal context, *State v. Donahue*, 25 Kan. App. 2d 480, 967 P.2d 335, *rev. denied* 266 Kan. 1111 (1998), applied the holding in *Flanagan* and held that an order disqualifying counsel from joint representation of several criminal defendants was not an appealable order. The *Donahue* court also based its conclusion on the absence of any express statutory authority for an interlocutory appeal by a criminal defendant. 25 Kan. App. 2d at 483.

Civil cases addressing the appropriate means of appealing disqualification orders, however, have not necessarily found jurisdiction lacking. In *Parker*, 245 Kan. 580, the district court entered an order for disqualification of counsel, and counsel filed a petition in mandamus seeking to set aside the disqualification. This court acknowledged the conflict in cases concerning appeals of disqualification orders. First, the *Parker* court noted that *Skahan* held that mandamus is not a proper remedy. Next, this court cited *Richardson-Merrell* and pointed out that while the *Richardson-Merrell* Court held that orders disqualifying counsel in civil cases are not collateral orders subject to appeal as final judgments under 28 U.S.C. § 1291,

" '[a]s we noted in *Firestone*, "a party may seek to have the question certified for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b), . . . and, in the exceptional circumstances for which it was designed, a writ of mandamus from the court of appeals might be available." ' 472 U.S. at 435 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378-379 n.13, 66 L. Ed. 2d 571, 101 S. Ct. 669 [1981])." 245 Kan. at 584-85.

The *Parker* court ultimately stated that "plaintiff should have requested an interlocutory appeal due to the district court's certification of the matter," but decided to treat the petition in mandamus as an interlocutory appeal. 245 Kan. at 585. This court went on to hold that the matter, which involved an interpretation of Kansas' recently adopted Model Rules of Professional Conduct, was appropriate for interlocutory appeal. 245 Kan. at 586.

## Viability of Skahan

Recognizing this line of cases and the decisions of the United States Supreme Court, Flores Rentals argues that *Parker* does not clearly adopt the holding of *Richardson-Merrell*, that *Richardson-Merrell* is distinguishable from the present case, and that Kansas need not follow United States Supreme Court precedent because this is an issue of state law.

In the attempt to distinguish *Richardson-Merrell*, Flores Rentals notes that the plaintiff in the federal case was not left completely without representation because it was merely out-of-state cocounsel that was disqualified. In contrast, Flores Rentals contends that the district court's order should be reviewable here because, if the disqualification stands, Flores Rentals will "irretrievably lose the financial investment Plaintiff has in its only counsel of record in the pre-filing proceedings and the nine months of work on the case thereafter." This argument is not persuasive.

The *Richardson-Merrell* Court acknowledged the fact that an order disqualifying counsel may impose significant hardship on litigants and that such hardship might tempt appellate courts to assert jurisdiction. The Court rejected the notion that this might justify transforming the limited exception to the federal finality rule. 472 U.S. at 440.

Flores Rentals further argues that *Richardson-Merrell* is distinguishable because the United States Supreme Court did not require a showing of prejudice with respect to the disqualification order. Flores Rentals argues that Kansas appellate courts generally follow the harmless error rule and do not reverse judgments unless the appealing party can show that the district court error resulted in prejudice to the party. See *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 701, 715 P.2d 2 (1986) (pertaining to admission of evidence). Bolstering its argument, Flores Rentals points to *Skahan*, where the Court of Appeals stated: "If plaintiff should lose on the merits, he would have an almost insurmountable burden to show his loss was due to the change of counsel." 8 Kan. App. 2d at 207. However, this very line of thought was rejected in *Richardson-Merrell*. Although the Supreme Court stated it was not

deciding the issue of whether prejudice is a prerequisite to the reversal of a judgment following the erroneous disqualification in a civil case, the Court noted that the difficulties in proving prejudice identified by the federal Court of Appeals went more to the issue of what was required to reverse a final judgment than whether the disqualification order should be subject to immediate appeal. 472 U.S. at 438. This point is illustrated by decisions in which courts have concluded that when appealing after a final judgment and alleging prejudice resulting from the disqualification of counsel, a modified test is applied. See *In re Estate of Chuong*, 623 A.2d 1154 (D.C. Ct. App. 1993) (disqualification of attorney not immediately appealable collateral order; party challenging order on appeal from final judgment need not demonstrate prejudice; rather, once order is shown to have been erroneous, party opposing reversal bears burden of demonstrating lack of prejudice); *Harris v. David Harris, P.A.*, 310 Md. 310, 319-20, 529 A.2d 356 (1987) ("If it is established on appeal that the disqualification was in error, we shall presume that the disqualified attorney's former client has been prejudiced and the burden will be on the party advantaged by the erroneous disqualification to prove that the disqualification did not influence the outcome of the litigation.").

However, the *Richardson-Merrell* Court did not decide whether prejudice would be required or what test would be applied if prejudice must be shown because it focused more on the fact that the second prong of the collateral order test was not satisfied: "Even apart from *Flanagan*'s analysis, we would conclude that orders disqualifying counsel in civil cases are not 'completely separate from the merits of the action.' [Citation omitted.]" 472 U.S. at 439. After further discussion, the court stated:

"Orders disqualifying attorneys on the ground that they should testify at trial, for example, are inextricable from the merits because they involve an assessment of the likely course of the trial and the effect of the attorney's testimony on the judgment. [Citation omitted]. Appellate review of orders disqualifying counsel for misconduct may be entwined with the merits of the litigation as well. If reversal hinges on whether the alleged misconduct is 'likely to infect future proceedings,' [citation omitted] courts of appeals will often have to review the nature and content of those proceedings to determine whether the standard is met. . . . In light of these factors, we conclude that orders disqualifying counsel in civil cases, as a

class, are not sufficiently separable from the merits to qualify for interlocutory appeal." *Richardson-Merrell*, 472 U.S. at 439.

Thus, Flores Rentals attempts to distinguish *Richardson-Merrell* are unavailing. The policy arguments raised by Flores Rentals were considered and rejected and the Court held that the second prong of the collateral order doctrine could not be met in the circumstances of this case—where the motion to disqualify arises because the attorney may be a witness because the merits of the motion are intertwined with the merits of the litigation.

Additionally, we note that other jurisdictions have followed the holding in *Richardson-Merrell* and have rejected the notion that disqualification orders are immediately appealable as a matter of right. See, *e.g.*, *In re Sharpe*, 98 B.R. 337 (N.D. Ill. 1989) (although jurisdiction may exist if district court granted leave to appeal interlocutory order under 28 U.S.C. § 158[a] [1982], disqualification orders not appealable as of right under 28 U.S.C. § 1291); *Howard v. Mail-Well Envelope Co.*, 164 F.R.D. 524, 528 (D. Colo. 1996) (order to disqualify counsel not subject to collateral order exception); *Burger and Burger, Inc. v. Murren*, 202 Conn. 660, 522 A.2d 812 (1987) (order granting disqualification of counsel could not be considered separate and distinct from main action, was not final judgment, and could not be immediately appealed); *Acierno v. Hayward*, 859 A.2d 617 (Del. 2004) (finding *Richardson-Merrell* persuasive; plaintiff had opportunity to invoke appellate court's jurisdiction through the certification process of the state's supreme court rule but failed to do so).

As Flores Rentals points out, several state courts have distinguished *Richardson-Merrell*. See *Maddocks v. Ricker*, 403 Mass. 592, 600-01, 531 N.E.2d 583 (1988) (permitting appeal of attorney disqualification order if such order involves issues collateral to basic controversy and appeal from judgment dispositive of entire case would not be likely to protect client's interests; if the issues are not collateral, interlocutory review can be obtained only on report by motion judge or by leave of appellate judge); *Goldston v. American Motors Corp.*, 326 N.C. 723, 725-26, 392 S.E.2d 735 (1990) (generally no right of immediate appeal from interlocutory orders; state

statutes set out exceptions under which interlocutory orders are immediately appealable); *In re Myers*, 107 Ohio App. 3d 489, 494, 669 N.E.2d 53 (1995) (noting that Ohio Supreme Court has not expressly adopted the logic of *Richardson-Merrell*). Still other jurisdictions have adopted a state test separate from the federal analysis. See *Briggs v. McWeeny*, 260 Conn. 296, 313-14, 796 A.2d 516 (2002) (under two-part test under state law, disqualification of counsel orders, otherwise interlocutory, may be appealable); *DHR Intern., Inc. v. Winston and Strawn*, 347 Ill. App. 3d 642, 646, 807 N.E.2d 1094 (2004) (noting that in 1996 the Illinois Supreme Court amended its state Supreme Court Rule 306 to allow for permissive appeals of orders granting motions to disqualify counsel); *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997) (district court's order disqualifying defense counsel was not final order but was appealable because order involved issues collateral to underlying action and delaying appeal would not likely protect defendants' interests in procuring counsel of their own choosing and in time and expense associated with hiring new counsel).

Consistent with these decisions, we recognize that this court is not bound to follow *Richardson-Merrell*. However, we find no basis to depart from the analysis of that decision. We note that the rationale of *Skahan* is founded upon the very federal doctrine and federal law that is discussed in *Richardson-Merrell*. Because the reasoning and holding in *Skakan* runs contrary to the holding in *Richardson-Merrell*, the foundation of *Skakan* no longer exists. Furthermore, the collateral order doctrine has been recognized as a very narrow exception to the requirement of a final decision. There is no sound policy to liberalize the doctrine, especially when the opportunity exists for an interlocutory appeal if the Court of Appeals is persuaded, in the exercise of its discretion, to allow the appeal. See, *e.g., Chrispens v. Coastal Refining & Mktg., Inc.*, 257 Kan. 745, 749, 897 P.2d 104 (1995) (jurisdiction exists where a motion to disqualify counsel has been denied but the issue has been properly brought on interlocutory appeal pursuant to K.S.A. 60-2102[c]).

Although the parties' arguments invite us to determine whether the collateral order doctrine is recognized in Kansas and, if so, what

the prejudice requirement will be in cases such as this, we need not reach these questions because the facts of this case do not satisfy the collateral order doctrine even if it was recognized. As concluded in *Richardson-Merrell,* under the circumstances of this case where the motion for disqualification arises because an attorney may be a witness, the second prong of the test cannot be met: the merits are inextricably intertwined with the merits of the case. Thus, there is no appellate jurisdiction in this case under the collateral order doctrine.

We conclude that an order disqualifying counsel is not a final decision for purposes of an appeal pursuant to K.S.A. 60-2102(a)(4), which requires a final decision before an appellate court acquires jurisdiction. As this court stated in *Parker,* 245 Kan 580, the only appellate remedy available to a party appealing from an order disqualifying counsel, at least in the circumstances where the issue is intertwined with the merits of the case, is to take an interlocutory appeal or to appeal after a final decision.

Appeal dismissed for lack of jurisdiction.

ALLEGRUCCI, J., not participating.

LOCKETT, J., Retired, assigned.