NOT DESIGNATED FOR PUBLICATION
No. 112,616

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF LENEXA,
*Appellee*,

v.

WESTERN SURETY COMPANY,
*Appellee*,

and

T&L ZARDA INVESTMENTS, LLC,
*Appellant*,

v.

CRETCHER HEARTLAND, LLC, *et al.*, and WESTERN SURETY COMPANY,
*Appellees*,

v.

LISA A. ZARDA, *et al.*, and TIMOTHY J. ZARDA, *et al.*,
*Appellants*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS SUTHERLAND, judge. Opinion filed October 9, 2015. Appeal dismissed.

*Nathan C. Harbur*, of Nathan C. Harbur, Chartered, of Leawood, and *Michael W. Blanton*, of Blanton Law Firm, of Evergreen, Colorado, for appellants.

*Kyle N. Roehler* and *Scott D. Hofer*, of Foland, Wickens, Eisfelder, Roper & Hofer, P.C., of Kansas City, Missouri, for appellee Cretcher Heartland, LLC.

*MacKenzie C. Harvison* and *Scott Brinkman*, of Lenexa, for appellee City of Lenexa.

*Noemi F. Donovan*, of Baker Sterchi Cowden & Rice, LLC, of Overland Park, and *Robert A. Babcock*, of Baker, Sterchi Cowden & Rice, LLC, of Kansas City, Missouri, for appellee Western Surety Company.

Before PIERRON, P.J., MCANANY, J., and BURGESS, S.J.

*Per Curiam*:  In this appeal we are asked to apply the collateral order doctrine to permit this appeal to go forward in spite of the fact that there has been no final judgment and the district court has not certified the matter for an interlocutory appeal. We conclude that because the appellants have failed to meet the requirements of the narrowly applied collateral order doctrine, we must dismiss this appeal for lack of jurisdiction.

This action arises out of the City of Lenexa's claim that the developer of the Bristol Ridge Subdivision failed to pay an excise tax due the City. The City required developers to pay an excise tax as a precondition to platting a subdivision. The tax revenue generated was to be used to fund the transportation needs of the City.

*Facts*

The initial developer of the project was Plantation, L.L.C. Plantation reached an agreement with the City that in lieu of immediately paying the excise tax, Plantation would construct a public roadway and apply the cost to reduce the amount of tax due on the project.

The project apparently did not progress as planned, and the excise tax was not paid. T&L Zarda Investments, LLC, took over the project from Plantation. Cretcher

Heartland, LLC, a broker, arranged for a $229,461 performance bond to cover the tax obligation. The bond was issued by Western Surety Company with Zarda named as the principal on the bond. The bond guaranteed Zarda's payment of the excise tax to the City. In turn, the individuals making up Zarda—Tim Zarda, Lisa Zarda, the Timothy J. Zarda Revocable Trust, and the Lisa Ann Zarda Revocable Trust—agreed to indemnify and hold Western harmless for all costs incurred in connection with any demand that Western make payment on the bond.

When the tax remained unpaid, the City brought this action against Zarda and Western, its surety, for payment of the tax.

There followed a flurry of claims. Western asserted cross-claims for indemnity against Zarda and third-party claims for indemnity against the individual Zarda members. Zarda filed cross-claims and counterclaims against Western. Zarda asserted a third-party claim against Cretcher. Zarda indemnitors Tim and Lisa Zarda asserted counterclaims against Western.

In March 2014, all parties participated in mediation and reached a written settlement agreement that was memorialized on a settlement offer sheet and signed by all parties. The parties agreed that the following payments would be made to the City:

- $100,000 from Western
- $20,000 from Zarda
- $5,000 from Cretcher.

The agreement provided for the City to release the parties from the City's claims and identified claims between the Zardas and Western that remained unresolved and were

3

reserved for trial. The agreement provided for the assessment of costs. It specifically noted that there was no confidentiality agreement.

Between March and July 2014, the parties engaged in extensive discussions in an unsuccessful effort to arrive at a more formal written settlement agreement consistent with the settlement offer sheet. In the course of those discussions, the Zardas took the position that they wanted to add terms: (1) to preserve their claims against Western for the negligence of Cretcher; and (2) to include a nonadmissibility or confidentiality provision that would preclude Western from using the settlement agreement in evidence at the trial of the remaining claims between the Zardas and Western. Neither of these terms had been included in the settlement offer sheet, and in fact, "confidentiality" was specifically excluded.

After the mediation, the Zarda parties filed a motion to amend the case management order and to continue the trial on the unsettled claims. In doing so, the Zardas acknowledged that a settlement agreement had been reached in mediation, but they asserted that "certain terms of the agreement between such parties have not yet been resolved and such parties' legal counsel has been engaged in discussions and negotiations regarding the same rather than on discovery in this case."

After numerous drafts of a formal agreement were rejected by the Zardas, Cretcher proposed memorializing the settlement in two separate agreements: one between Western, Cretcher, and the City (the Western agreement); and a separate agreement between the Zardas, Cretcher, and the City (the Zarda agreement). Under this proposal, Western would not be a party to the Zarda agreement and the Zardas would not be parties to the Western agreement.

Under the Western agreement, the City, Western, and Cretcher each released all claims against the other parties to the agreement. (Western did not release any claims against the Zardas who were not parties to the agreement.)

Under the Zarda agreement, the City and Cretcher released all claims against the other parties to the agreement. Likewise, the Zardas released all claims against the other parties to the agreement, but they left unresolved any claims between Western and the Zardas. While the Zardas released Cretcher, they "expressly preserv[ed] all of those claims against Western Surety arising from any acts of Cretcher Heartland in which Cretcher Heartland acted as an agent or representative for Western." Further, the Zardas continue to dispute Western's liability to the City under the bond. Finally, the parties to the Zarda agreement agreed to keep their settlement agreement confidential and not disclose it to Western. The Zardas insisted on this confidentiality provision even though it was expressly rejected in the agreement signed by the parties at the time of mediation.

According to Cretcher, Western, and the City, as stated in their appellate brief, the apparent purpose of this confidentiality provision was to "deprive Western Surety of access to the Zarda instrument, and to prevent Western Surety from using the instrument in the subsequent trial to prove, inter alia, the reasonableness of its settlement with the City." The Zardas did not contest this assertion in their reply brief. It is not entirely clear how this would occur if the district court would have approved the later drafts which included the confidentiality provision only in the agreement to which Western was not a party. But in oral argument before us, none of the parties contested the notion that this would be the effect of the Zarda instrument if approved by the court. In any event, Western was not aware of the inclusion of this confidentiality provision in the Zarda instrument at the time these two later agreements were signed.

5

Both instruments were executed in June 2014. Before settlement payments were sent to the City, Cretcher erroneously sent a copy of the Zarda agreement to Western. When Western learned of the confidentiality provision in the Zarda agreement, it refused to pay its $100,000 to the City. The Zardas asserted that Cretcher had breached the terms of the Zarda agreement by sending a copy to Western, so they refused to release Cretcher or to dismiss Cretcher from the action.

In July 2014, the parties filed cross-motions to enforce settlement of various claims. In those motions, the parties acknowledged that the Western agreement and the Zarda agreement had been executed with the intent of memorializing the settlement reached in mediation in March 2014. Western, Cretcher, and the City asked the court to enforce the mediation settlement memorandum of March 2014 and contended the later two agreements were void and unenforceable because they conflicted with the settlement reached in March 2014. The Zardas sought enforcement of the later two agreements. They contended that the later instruments were full, complete, and final settlements executed with the intention of memorializing the March 2014 settlement agreement.

At the hearing on these motions, the district court ruled that the two later instruments were not enforceable because they conflicted with the March 2014 settlement agreement. The court granted the motions of Cretcher, Western, and the City and ordered that a "settlement agreement be executed consistent with the settlement offer sheet."

The Zardas asked the district court to declare that its order was a final order for purposes of an appeal under K.S.A. 2014 Supp. 60-254(b). In the alternative, they asked the court to certify that the court's order involved a controlling question of law that warranted an interlocutory appeal. The district court denied both requests.

6

In order to implement its order, in September 2014 the district court entered an order incorporating an agreement and forms of release it determined to be consistent with the March 2014 settlement and directed the parties to sign them. The signature blocks stated that the parties "executed the same as [his/her/its] free act and deed." The parties signed. The Zardas did so reluctantly, apparently with a disclaimer regarding the "free act and deed" provision.

Notwithstanding the district court's decision not to declare its order to be a final judgment ripe for appeal or to certify its order so as to warrant an interlocutory appeal, the Zardas appealed, bringing the matter to us.

*Appellate Jurisdiction*

None of the parties contends that this appeal should be retained as an interlocutory appeal under K.S.A. 2014 Supp. 60-2102. They all agree that this appeal is not from a final order under K.S.A. 2014 Supp. 60-2102(a) or from an order certified as final as to some but not all parties or as to some but not all issues under K.S.A. 2014 Supp. 60-254. Further, this appeal is not from an order in which the district court raised an issue for which there were substantial grounds for different opinions which an immediate appeal would help resolve. See K.S.A. 2014 Supp. 60-2102(c). But the Zardas contend that we may retain this appeal under the collateral order doctrine. The rest of the parties contend we have no jurisdiction to consider this appeal.

We have the duty to examine our own authority to consider an appeal under these circumstances. If we lack jurisdiction, we have the duty to dismiss this appeal. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013). Whether jurisdiction exists is a question of law over which our review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). The right to

7

appeal is purely statutory and is not contained in the United States or Kansas Constitutions. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609-10, 244 P.3d 642 (2010). Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statute. *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009).

The collateral order doctrine, which the Zardas rely upon, is a "very narrow" exception to the final decision requirement for appellate jurisdiction. 288 Kan. at 290. The doctrine should be used sparingly to reach a small class of collateral rulings that "'although they do not end the litigation, are appropriately deemed "final." . . .' [Citations omitted.]" *In re T.S.W.*, 294 Kan. 423, 434, 276 P.3d 133 (2012). In *Harsch*, our Supreme Court emphasized that a party is in a "risky" position when relying on the collateral order doctrine to establish jurisdiction. 288 Kan. at 290.

For the doctrine to apply, the Zardas must show that the following requirements have been met: (1) the order conclusively determined the disputed question; (2) the order resolved an important issue completely and separately from the merits of the action; and (3) the order would be effectively unreviewable on appeal from a final judgment. *Kansas Medical*, 291 Kan. at 611-12. We note the conjunctive *and* in these requirements. All three requirements must be met in order for the appeal to go forward. We will examine each of these requirements in turn.

1. *The order conclusively determined the disputed question.*

The parties agree that this requirement has been met. The disputed question is which settlement agreement or agreements should be enforced: the March 2014 mediated agreement or the later Western and Zarda forms of agreement. The district court ruled

that the March 2014 mediated agreement should be enforced. Thus, the district court conclusively determined the disputed question.

2. *The order resolved an important issue that is completely separate from the merits of the action.*

The district court's order enforcing the March 2014 settlement agreement does not resolve important issues that are completely separate from the merits of the action. The mediation settlement memorandum compelled the parties to execute an instrument consistent with the March 2014 settlement agreement. Under the terms of the agreement, the City's claims against T&L Zarda to pay the excise tax and the City's claims against Western for breach of the surety bond were settled. The City agreed to release all parties in exchange for the monetary payments totaling $125,000. In addition, T&L Zarda's claims for negligence against Cretcher were settled. All parties to the agreement agreed to release Cretcher from all claims. Finally, the district court's order provided that the settlement agreement was not confidential and delineated what claims were preserved for trial between Western and the Zardas.

The Zardas claim that an immediate appeal is warranted because the district court's order deprives them of the right not to stand trial. The other parties claim that the right not to stand trial in a civil case is not sufficiently important to warrant an immediate appeal and to satisfy this second requirement of the collateral order doctrine.

*Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 502, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989), involved the 1985 hijacking of the cruise ship *Achille Lauro* and the murder of American passenger Leon Klinghoffer. This incident prompted John Adams' acclaimed but controversial opera, *The Death of Klinghoffer*.

9

In *Lauro Lines* the ship's passengers sued the ship's owner, an Italian company. Lauro Lines moved to dismiss based on a forum-selection clause printed on each passenger's ticket which permitted it to be sued only in Naples, Italy. The district court denied the motion, ruling that the ticket did not give reasonable notice to the passengers that they were waiving the opportunity to file suit in a domestic forum. In its review, the United States Supreme Court held that Lauro Lines failed to show that the issue was effectively unreviewable on appeal from a final judgment. 490 U.S. at 501. In his concurring opinion Justice Scalia noted:

> "The importance of the right asserted has always been a significant part of our collateral order doctrine. When first formulating [the collateral order doctrine] in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 93 L. Ed. 2d 152, 69 S. Ct. 1221 (1949), we said that it permits interlocutory appeal of final determinations of claims that are not only 'separable from, and collateral to, rights asserted in the action,' but also, we immediately added, '*too important* to be denied review.' [Citation omitted] (emphasis added). Our later cases have retained that significant requirement." *Lauro Lines*, 490 U.S. at 502.

Justice Scalia pointed to prior cases in which the Court stressed the significance of the requirement that the issue be sufficiently important. See *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978) (the order must resolve an important issue that is completely separate from the merits of the action); *Abney v. United States*, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977) (in order to qualify for immediate appeal, the order must involve an important right which would most likely be irreparably lost if review had to await final judgment). Justice Scalia stated that although the "'right not to be sued elsewhere than in Naples'" is "positively destroyed . . . by permitting the trial to occur," the right is "not sufficiently important to overcome the policies militating against interlocutory appeals." *Lauro Lines*, 490 U.S. at 502-03.

10

Similar to the present case, *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994), involved an immediate appeal from the district court's refusal to enforce a settlement agreement because Digital Equipment failed to disclose material facts during settlement negotiations. The appellant sought to apply the collateral order doctrine based on a right not to have to go to trial after reaching a settlement. The United States Supreme Court distinguished a "right not to stand trial" emanating from the Constitution or statute from a privately conferred right arising from a civil settlement agreement. 511 U.S. at 873. The Court held that refusal to enforce a settlement agreement claimed to shelter a party from trial is not immediately appealable. The Supreme Court noted that it had "repeatedly stressed that the 'narrow' [collateral order doctrine] exception should stay that way and never be allowed to swallow the general rule . . . that a party is entitled to a single appeal, to be deferred until final judgment has been entered." 511 U.S. at 868. The Court noted:

"Nor does limiting the focus to whether the interest asserted may be called a 'right not to stand trial' offer much protection against the § 1291 limits. We have, after all, acknowledged that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.' [Citations omitted.] . . . Thus, precisely because candor forces us to acknowledge that there is no single, 'obviously correct way to characterize' an asserted right . . . we have held that § 1291 requires courts of appeals to view claims of a 'right not be tried' with skepticism, if not a jaundiced eye. [Citation omitted.]" 511 U.S. at 873.

The Zardas cite caselaw, but they make little argument as to how those cases support its position that the case is important enough for the application of the collateral order doctrine. Without such an argument, their contentions with respect to this requirement fail.

11

Aside from demonstrating the issue is sufficiently important, the Zardas must also demonstrate that the question to be resolved is completely separate and conceptually distinct from the merits of the action. To satisfy this element, the Zardas must show the issues to be reviewed has no bearing on the merits of the cause of action. See *Mitchell v. Forsyth*, 472 U.S. 511, 527-28, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (a claim for immunity for official conduct is separate from the merits of whether a plaintiff's rights have been violated); *Flanagan v. United States*, 465 U.S. 259, 266, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984) (issue of double jeopardy is immediately appealable because it has no bearing on the merits of the cause of action, but instead is a distinct and separate issue).

Here, the enforcement of the settlement agreement affects which parties remain in the cause of action and the scope of the claims that can be pursued at trial. The March 2014 mediated settlement released all claims against Cretcher. The later Zarda agreement purported to permit the Zardas to assert claims against Western for vicarious liability based on the conduct of Cretcher, who had been released by the Zardas. Further, a major point of the Zarda agreement was to limit the evidence that may be admitted at a later trial of the remaining unresolved claims.

The issue they ask us to address in this appeal is neither sufficiently important nor does it appear to be completely distinct from the issues that remain for trial on the unresolved claims between Western and the Zardas.

3. *The order would be effectively unreviewable on appeal from a final judgment.*

Because the requirements for this appeal to proceed under the collateral order doctrine are cumulative rather than in the alternative, our analysis above concerning the second requirement effectively ends the matter. Nevertheless, in case we somehow missed the boat in that analysis, out of an abundance of caution we will address the third

requirement for the collateral order doctrine to apply: that the district court's order on the settlement agreement dispute would be effectively unreviewable when the remaining claims are finally resolved.

Unfortunately for the Zardas, we fail to see how the court's pretrial ruling in this case ultimately will be "effectively unreviewable." We agree with the other parties that the district court's pretrial ruling can be addressed on appeal from a final judgment in this case "[l]ike the thousands of other pre-trial ruling[s] made on a daily basis by Kansas trial courts."

The Zardas rely on *Erie v. Reeside*, 200 Md. App. 453, 455 n.2, 28 A.3d 54 (2011), in which the appellate court, citing *Clark v. Elza*, 286 Md. 208, 406 A.2d 922 (1979), observed in a footnote but without any analysis that a ruling denying a motion to enforce a settlement agreement is subject to immediate appeal under the collateral order doctrine. Nowhere in the court's analysis section of its opinion is the collateral order doctrine raised or addressed. Further, in *Clark*, upon which the court in *Erie* relied, the district court's ruling on the motion to enforce the settlement agreement would have effectively terminated the action. In contrast, the district court's ruling in our present case did not terminate the litigation. There remained issues for trial between Western and the Zardas that apparently could be affected by which form of settlement was the correct one.

*Cook v. Surety Life Ins. Co.*, 79 Hawaii 403, 408, 903 P.2d 708 (1995), cited by the Zardas, involved an interlocutory appeal under the collateral order doctrine in a dispute over a settlement agreement that, if enforced, would end the plaintiffs' claims for personal injury and loss of consortium. Plaintiffs claimed their attorney had no authority to agree to settle the matter on their behalf. But there still remained the unrelated issue raised in cross-claims by the defendants Hilton Hotels Corporation and Surety Life Insurance Company, its surety, as to which of them was liable for the plaintiffs' damages.

13

Thus, the outcome of the dispute in *Cook* over whether the plaintiffs' lawyer had the authority to enter into the settlement agreement was separate from and collateral to the merits of the underlying suit and would have no impact on the resolution of the remaining issues between Hilton and its surety. This is not what we face here. The resolution of the remaining Western/Zardas dispute apparently could be affected by the outcome of the dispute over which form of settlement agreement controls. If this appeal goes forward, the parties seem to agree that it could affect how the remaining issues will be tried.

The court in *In re Estate of Bullotta*, 2002 PA Super. 136, 798 A.2d 771 (2002), applied the collateral order doctrine in an estate case. The parties had entered into a marital settlement agreement in a divorce proceeding, but the husband died prior to the divorce. The district court found that the settlement agreement remained in full force and effect and was controlling in the distribution of the husband's estate. The wife appealed before the estate was settled. The court found it had jurisdiction over the matter under the collateral order doctrine because "a claim may be irreparably lost because there is as possibility that funds or real property that may be included in the estate may be transferred, sold, or dissipated before a final accounting occurs." 2002 PA Super. 136, ¶ 6. There is no such claim here.

Finally, in *Towers Hotel Corp. v. Rimmel*, 871 F.2d 766 (8th Cir. 1989), the plaintiff, a hotel operator in St. Louis, Missouri, alleged that the receiver of the Mansion House properties had breached its lease. The receiver counterclaimed, alleging wrongful conduct by Towers. The parties entered into a settlement agreement, which was conditionally approved by the court. Towers sought to enforce the settlement agreement, but the district court denied the motion based on Towers' failure to comply with a provision in the settlement agreement to make a capital improvement and construct a sprinkler system as required by the lease. As a threshold issue, the appellate court addressed whether the collateral order doctrine applied and decided that all three

requirements were satisfied, noting that "[b]y virtue of this agreement, there is no prospect of any further district court proceedings resulting in a 'final judgment' with respect to the parties' original claims." 871 F.2d at 770. Of course, the litigation in our present case continues. Unlike in *Towers*, there remain claims to be litigated between parties to the conflicting forms of settlement agreement.

In their reply brief, the Zardas do not tie these cases to our present facts. They simply argue that the cited United States Supreme Court decisions are not binding on Kansas courts when applying the collateral order doctrine. See *Kansas Medical*, 291 Kan. at 616. But the court in *Kansas Medical* explained:

> "While none of these authorities controls our consideration of the application of the collateral order doctrine, the analysis and policy expressed are consistent with the Kansas analysis of interlocutory appeals and the collateral order doctrine. First, Kansas has a clear policy to avoid piecemeal appeals. Second, our recent case law emphasizes the limited availability of the collateral order doctrine." 291 Kan. at 616.

The Zardas argue that the decisions in *Lauro Lines* and *Digital Equipment* involve different underlying issues. But the requirements relied upon in those cases are the same requirements adopted by Kansas, and "Kansas has adopted the United States Supreme Court's collateral order doctrine." *Kansas Medical*, 291 Kan. at 612. The principles expressed in the United States Supreme Court's opinions regarding the application of the collateral order doctrine are in line with Kansas policy to apply the doctrine sparingly. "There is no sound policy to liberalize the [collateral order] doctrine, especially when the opportunity exists for an interlocutory appeal if the Court of Appeals is persuaded, in the exercise of its discretion, to allow the appeal. [Citation omitted.]" *Flores Rentals v. Flores*, 283 Kan. 476, 490, 153 P.3d 523 (2007). Finally, the federal statute 28 U.S.C. § 1291 (2012) and K.S.A. 2014 Supp. 60-2102(a)(4) are virtually identical, permitting

appeals from a "final decision." We are not persuaded by the Zardas' assertion that there are "significant differences" between Kansas law and applicable federal law regarding the collateral order doctrine.

*Conclusion*

Based on the foregoing analysis, we conclude that the Zardas have failed to demonstrate that they have satisfied the requirements for an appeal under the collateral order doctrine before the district court has entered a final judgment in this matter. Accordingly, the resolution of the Zardas' issue about the correctness of the district court's ruling on the correct form of settlement agreement must await a final resolution of the remaining issues before the district court.

Appeal dismissed for lack of jurisdiction.