IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,307

In the Matter of the Estate of
LANNY LENTZ.

SYLLABUS BY THE COURT

1.

A motion to alter or amend a judgment under K.S.A. 2019 Supp. 60-259(f) tolls the time within which an appeal may be taken under K.S.A. 2019 Supp. 60-2103(a).

2.

Motions to reconsider are generally treated as motions to alter or amend a judgment under K.S.A. 2019 Supp. 60-259(f).

3.

Other posttrial motions, including motions for relief from a final judgment under K.S.A. 2019 Supp. 60-260(b), do not toll the time to file an appeal.

4.

Where a motion is timely under K.S.A. 2019 Supp. 60-259(f), not completely devoid of substance, and offers at least some identifiable reason for reconsidering the judgment, it is properly construed as a motion to reconsider under K.S.A. 2019 Supp. 60-259(f).

5.

When a Court of Appeals panel finds it lacks jurisdiction over an appeal, it must dismiss the appeal.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 8, 2019. Appeal from Shawnee District Court; FRANK J. YEOMAN, JR., judge. Opinion filed December 11, 2020. Judgment of the Court of Appeals dismissing the appeal is reversed and the case is remanded to the Court of Appeals with directions.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, argued the cause and was on the briefs for appellant Diann Wyatt.

*Aaron R. Bailey*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, argued the cause, and *Alan V. Johnson*, of the same firm, was with him on the briefs for appellees Lana Kennedy and Marilyn Lentz.

The opinion of the court was delivered by

WALL, J.:  This case requires the court to decide whether Appellant's posttrial motions should be construed as motions to alter or amend judgment under K.S.A. 2019 Supp. 60-259(f) or instead as motions for relief from judgment under K.S.A. 2019 Supp. 60-260(b). The classification is potentially outcome determinative. Construed under K.S.A. 2019 Supp. 60-259(f), the motions tolled the deadline for filing notice of appeal, rendering the appeal timely. Alternatively, construed under K.S.A. 2019 Supp. 60-260(b), the motions did not toll the notice of appeal deadline, depriving the appellate court of jurisdiction.

The matter arises from the district court's distribution of Lanny Lentz' estate among his three daughters:  Lana, Marilyn, and Diann. The probate process was contentious. Lana was the first executor and a final settlement was nearly reached during her tenure. But she resigned amid allegations of impropriety. Marilyn then took over as executor. Diann filed a motion seeking damages from Lana but later withdrew it. Marilyn

2

eventually proposed another final settlement, which the district court judge approved with slight modification.

After the district judge entered a journal entry approving the final settlement, Diann filed a "Petition to Set Aside and/or Reconsider" the final settlement wherein she argued she should be allowed to reinstate her claim for damages. Simultaneously, Diann filed an "Objection to Discharge of Executrix . . . and Petition to Disgorge Fees for Administration Paid to the Fiduciary" objecting to the court's discharge of Marilyn as the executrix. The district judge denied the motions. Diann appealed, arguing the property values for four properties in the final settlement were not supported by substantial competent evidence.

The Court of Appeals held that it lacked jurisdiction over Diann's appeal because her posttrial motions did not toll the time for her to appeal. The Court of Appeals also wrote that even if it had jurisdiction over Diann's appeal, Diann would nevertheless lose because she did not object to the final settlement valuations. We hold that the Court of Appeals did in fact have jurisdiction over Diann's appeal, and we remand to the Court of Appeals for consideration of the substantial competent evidence issue.

FACTS AND PROCEDURAL BACKGROUND

Lentz amassed numerous Topeka rental properties during his lifetime. He passed away in 2012. His will directed that his estate be divided equally between his three daughters. A district court judge admitted Lentz' will to probate and appointed Lana as executor.

In September 2015, Lana petitioned for final settlement of Lentz' estate and filed an inventory and valuation of the estate's assets. Diann opposed the proposed settlement, alleging Lana had mismanaged the estate. A district judge rejected the settlement in

3

November 2015. In December 2015, Diann petitioned for Lana's removal as executor and sought damages from Lana. After this, Lana resigned as executor and the district judge appointed Marilyn in her stead. In May 2016, Diann withdrew her petition for damages.

In December 2016, Marilyn petitioned for a new final settlement. The proposed settlement gave Marilyn and Lana the family burial plots, five homes, and several vacant lots as tenants in common. Marilyn valued this share at $102,000. The proposed settlement gave Diann two homes that Marilyn valued at a combined $34,000.

Diann objected to the proposed final settlement. The district judge held a hearing on the proposal. Marilyn testified that she was qualified to provide Certified Market Analyses (CMAs) of the estate's properties and explained how she had valued each property. Diann argued that all the properties should be sold at auction and the proceeds divided. The district judge's minutes from this hearing state that the proposed settlement "should be granted with modification."

On December 30, 2016, the district judge issued a journal entry approving a final settlement and amended final accounting. The final settlement adopted the same allocation of real property as the proposed settlement, but the values assigned to some of the properties differed from those values Marilyn provided in her accounting as well as her testimony from the hearing on the proposed final settlement.

On January 27, 2017, Diann filed two motions. The first was a "Petition to Set Aside and/or Reconsider Order of Final Settlement and Reinstitute Claim for Damages Against Former Executrix Lana Kennedy." In this, Diann moved "for her cause of action, in part pursuant to K.S.A. 60-260(b)(1) and (2)." Diann detailed Lana's removal as executor and her own claim for damages against Lana that she subsequently withdrew. Diann wrote that she

4

"mistakenly believed that she did not have a valid claim [for damages] based upon the representations of her counsel, felt unduly pressured to withdraw her claim and now requests that it be reinstituted. She requests that the Order of Final Settlement be set aside to the extent to allow her to proceed with her damage claims against Lana Kennedy and her opposition to the discharge of Marilyn Lentz."

The second filing was an "Objection to Discharge of Executrix, Marilyn Lentz, and Petition to Disgorge Fees for Administration Paid to the Fiduciary." In it, Diann alleged she withdrew her claim for damages "under the incomplete and erroneous advice and pressure by her counsel." She argued that Marilyn

"should not be discharged for it was her duty to prosecute the damages claim against the former fiduciary. She should have not sought or accepted being appointed successor fiduciary where it was evident that she, despite specific Court findings to the contrary, did not believe that the original fiduciary committed any malfeasance. That further bias and conflict of interest is apparent in the granting of real properties at final settlement which were requested, disbursed and ordered to be held in joint tenancy between Marilyn and Lana."

Diann requested that Marilyn's $12,000 executor fee be disgorged back to the estate.

The district judge held a hearing on these new filings on April 27, 2017. With respect to the motion to set aside the final settlement, Diann's counsel referred to the motion as a "petition to set aside and/or reconsider the order of final settlement related to the prior claim for damages against the former Executrix." Diann testified that she was represented by varying attorneys throughout the pendency of the estate. She said that her third attorney told her there was "no merit to the claim [for damages Diann filed against Lana], that there wouldn't be any damage relief." The attorney also counseled that "there was nothing left to get and this would be the time to go ahead and drop the claims for the damages and try to resolve any relationship that was left between the sisters" and that if

5

Diann dropped the damages claim, Marilyn and Lana would be more inclined to settle. As a result, in May 2016, Diann withdrew her petition for damages.

Diann also said her attorneys did not advise her that she could pursue a "personal judgment against [Lana] for breach of fiduciary duties." Diann requested that the district judge "allow [her] to set aside that portion of the order for final settlement dealing with this dismissal of [her] claims and allow [her] to re-institute those and proceed forward on those against [her] sister at this time."

The district judge rejected the motion. He said that Diann's decision to withdraw her petition for damages was a voluntary choice she made following discussion with her attorney. He found that there was no merit to Diann's attempt to set aside the final settlement.

With respect to the objection to the discharge of Marilyn as executor, Diann's counsel argued that Marilyn should have to disgorge her executor's fee because Marilyn had a duty to pursue claims against Lana for mismanagement and self-dealing, but failed to do so. As a result, Diann argued, Marilyn "basically provided no service to the estate." The district judge rejected this argument, finding that Diann could have raised these same arguments in a timely manner at the hearing on the final settlement in December 2016, but failed to do so. The district judge held: "[T]here's no further litigation, if you will, about what should be in the final settlement. That's already been determined."

On June 5, 2017, the district judge filed a journal entry memorializing his denial of Diann's posttrial motions. On June 21, 2017, the district judge filed a journal entry of final discharge for the estate. On July 5, 2017, Diann filed a notice of appeal. Therein, Diann appealed from "the Order of Final Settlement, filed on December 30, 2016, and Order denying said heir's Petitions for Reconsideration and Objection to Discharge of Executrix, filed on June 5, 2017."

6

Before the Court of Appeals, Diann argued that the property values used in the final settlement were not supported by substantial competent evidence. Lana and Marilyn argued that the Court of Appeals lacked jurisdiction over Diann's appeal because Diann's petition for reconsideration was filed only pursuant to K.S.A. 60-260(b)(1) and (2), which does not toll the time to file an appeal, and only addressed her petition for damages against Lana, not the values used in the final settlement. In her reply brief, Diann argued that her motion to set aside the final settlement was filed only "in part pursuant to K.S.A. 60-260(b)(1) and (2)" and was, by title and content, a motion to alter or amend the judgment under K.S.A. 60-259 that did toll her time to file an appeal.

The Court of Appeals panel dismissed the appeal for lack of jurisdiction. *In re Estate of Lentz*, No. 118,307, 2019 WL 494098, at *1 (Kan. App. 2019) (unpublished opinion). The panel held that Diann's motion to set aside the final settlement did not toll the time to file an appeal. The panel wrote that "Diann's entire motion to set aside and/or reconsider the final order of settlement essentially consists of complaints about bad legal advice from her prior counsel resulting in withdrawal of her request for damages." 2019 WL 494098, at *5. The panel zeroed in on Diann's request that the final settlement "be set aside *to the extent* to allow her to proceed with her damage claims against Lana Kennedy and her opposition to the discharge of Marilyn Lentz." 2019 WL 494098, at *5. The panel noted that to it, Diann's motion "reads in substance much more like a motion for relief from final judgment based upon a mistake or excusable neglect under K.S.A. 2017 Supp. 60-260(b)(1), which is precisely one of the statutory subsections mentioned in the opening sentence of Diann's motion." 2019 WL 494098, at *5.

The panel distinguished "a motion to . . . amend judgment under K.S.A. 2017 Supp. 60-259" from "a motion for reconsideration under K.S.A. 2017 Supp. 60-260(b)." 2019 WL 494098, at *5. It wrote that:

7

"A motion to alter or amend judgment under K.S.A. 2017 Supp. 60-259 is essentially an attack on errors allegedly made by the district court. It makes sense that a party should not be punished, and possibly lose the ability to appeal, because they are waiting on the district court to correct its own errors. That is clearly the reason why such a motion tolls the statute of limitations. But where a motion does not serve this purpose of allowing a court to potentially correct its own error, it does not make sense to simply consider it as a motion to alter or amend judgment just to permit a timely appeal.

"By contrast, a motion for reconsideration under K.S.A. 2017 Supp. 60-260(b) essentially asks for a whole new consideration of the issues based upon a party's own errors or the discovery of new evidence. Here it is undisputed that Diann *voluntarily* withdrew her request for damages against Lana. Whether she did this based on good or bad advice of counsel is beside the point. Diann says she made a mistake, but if this is true then it is clearly her own, or her counsel's, mistake, and no part of any decision arising from her choice to abandon her claims against Lana can be properly laid at the feet of the district court. A motion to reconsider under K.S.A. 2017 Supp. 60-260(b) asks for a whole new consideration of the issues based upon the parties' own errors, and the record clearly indicates that to be the situation here. We conclude that the deadline for appeal was not tolled by the motion to set aside and/or reconsider the order of final settlement of the estate, and thus the appeal was not timely filed." 2019 WL 494098, at *5.

Despite finding it lacked jurisdiction to consider Diann's appeal, the panel opined that "[e]ven if [it] were to find that proper jurisdiction existed to hear this appeal, [it] determined that the issues raised by Diann lack merit and should not be addressed." 2019 WL 494098, at *8. The panel noted that "Diann's complaints about the district court's valuations of the four disputed tracts were never raised or argued before the district court." 2019 WL 494098, at *8. The panel pointed out that Diann "objected only to Marilyn's proposed valuations of the properties prior to the final hearing, not to the district court's final valuations." 2019 WL 494098, at *8. Further, she "failed to object to the proposed journal entry within 14 days after service of the proposal. See Supreme Court Rule 170(c) [2019 Kan. S. Ct. R. 222]." 2019 WL 494098, at *8. Finally, the panel

8

wrote that Diann does not contend she failed to receive a copy of the CMA on December 23, 2016, nor that the final values differ from the CMA. "Diann challenges only the district court's approval of the values because the CMA was not submitted to the court, and the CMA values fell outside the range of values previously provided to the court." 2019 WL 494089, at *9.

This court granted Diann's petition for review.

*The Court of Appeals had jurisdiction over Diann's appeal.*

The Court of Appeals panel held that it lacked jurisdiction over Diann's appeal. To reach this conclusion, the panel considered whether Diann's January 27, 2017 filings tolled her time to appeal under statute. Thus, the relevant standard of review is as follows:

> "This court reviews questions of subject matter jurisdiction de novo. *Hill v. State*, 310 Kan. 490, 498, 448 P.3d 457 (2019). To the extent this question requires the interpretation of statutes, we apply a de novo analysis to that interpretation. *State v. LaPointe*, 309 Kan. 299, 312, 434 P.3d 850 (2019).

> ""Subject matter jurisdiction is the power of the court to hear and decide a particular type of action."' *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016) (quoting *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 [1985]). The Kansas Constitution bestows subject matter jurisdiction upon Kansas courts. *Dunn*, 304 Kan. at 811.

> "The Kansas Constitution provides that '[t]he judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as are provided by law.' Kan. Const. art. 3, § 1. Pursuant to this provision, the Kansas Legislature created the Court of Appeals and bestowed power upon it 'over appeals in civil and criminal cases . . . as may be prescribed by law.' K.S.A. 20-3001. As a result of these constitutional and statutory provisions, the

9

Kansas Court of Appeals 'may exercise jurisdiction only under circumstances allowed by statute.' *Flores Rentals v. Flores*, 283 Kan. 476, 481, 153 P.3d 523 (2007)." *State v. Smith*, 311 Kan. 109, 111-12, 456 P.3d 1004 (2020).

K.S.A. 2019 Supp. 60-2103(a) provides that "[w]hen an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be 30 days from the entry of the judgment." But some posttrial motions toll the 30-day clock. Per K.S.A. 2019 Supp. 60-2103(a), a motion to alter or amend a judgment under K.S.A. 2019 Supp. 60-259(f) is one such motion. K.S.A. 2019 Supp. 60-259(f) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Under our jurisprudence, "[m]otions to reconsider are generally treated as motions to alter or amend under K.S.A. 60-259(f)." *Exploration Place, Inc., v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004) (citing *Honeycutt v. City of Wichita*, 251 Kan. 451, 460, 836 P.2d 1128 [1992]).

Other posttrial motions, including motions for relief from a final judgment under K.S.A. 2019 Supp. 60-260(b), do not toll the time to file an appeal. K.S.A. 2019 Supp. 60-2103(a).

Here, Diann's motions were titled "Petition to Set Aside and/or Reconsider Order of Final Settlement and Reinstitute Claim for Damages against Former Executrix, Lana Kennedy" and "Objection to Discharge of Executrix, Marilyn Lentz, and Petition to Disgorge Fees for Administration Paid to the Fiduciary." The "Petition to Set Aside and/or Reconsider" said Diann moved "in part pursuant to K.S.A. 60-260(b)(1) and (2)." The petition did not mention K.S.A. 60-259 at all. The only issue it addressed was Diann's presettlement withdrawal of her claim for damages, and the fact that she now wanted to reinstitute that claim. The only relief sought was "that the Order of Final Settlement be set aside to the extent to allow her to proceed with her damage claims against Lana Kennedy and her opposition to the discharge of Marilyn." The parties

10

disagree as to whether these filings constituted proper motions to reconsider under K.S.A. 2019 Supp. 60-259(f) or motions for relief from judgment under K.S.A. 2019 Supp. 60-260(b) and, therefore, whether they tolled Diann's time to appeal.

Diann contends her motions are properly construed as motions to reconsider under K.S.A. 2019 Supp. 60-259, and therefore they tolled the time for filing her notice of appeal. Marilyn and Lana argue the filings should be construed exclusively as motions for relief from judgment under K.S.A. 2019 Supp. 60-260(b) and did not toll the time in which Diann could file her notice of appeal. The pair's theory amounts to a contention that even though Diann's motion was captioned a motion to "Reconsider," it was in fact not a motion to reconsider. Thus, they argue the lack of a timely notice of appeal deprives this court of jurisdiction over Diann's appeal. As we explain below, we disagree. We arrive at our conclusion by considering the relevant law, the facts of this case, and animating policy concerns.

Here, both the substance and timing of the motions support the conclusion that they are properly construed as motions to reconsider under K.S.A. 2019 Supp. 60-259(f). In analyzing the substance of the motions, we first note the Court of Appeals set out what was, in essence, a false dichotomy between the permissible grounds for relief under K.S.A. 2019 Supp. 60-259(f) compared to K.S.A. 2019 Supp. 60-260(b). Their attempt to delineate the basis or grounds for relief between the two statutes, for purposes of classifying the motions exclusively under one or the other, unhelpfully obscures the fact that there is substantial overlap between the two statutes. See *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995) (recognizing similarity between motion to alter or amend judgment and motion for relief from judgment and grounds for such relief under nearly identical federal rules); *Auday v. Wet Seal Retail, Inc.*, No. 1:10-CV-260, 2012 WL 124080, at *2 (E.D. Tenn. 2012) (unpublished opinion) ("Rule 60[b] does list the grounds for a motion for relief from judgment, and they are quite similar to those applied by courts in the Rule 59[e] context."). In short, the grounds for relief under

11

K.S.A. 2019 Supp. 60-260(b) substantially overlap with those supporting relief under K.S.A. 2019 Supp. 60-259(f).

With this clarification in mind, we turn to the substance of Diann's motions. Viewed together, the motions requested the district court reconsider its order approving final settlement and, therefore, they are properly construed as motions to reconsider under K.S.A. 2019 Supp. 60-259(f). Granted, the "Petition to Set Aside and/or Reconsider" did focus only on Diann's argument that she received poor legal advice. Even so, this motion was captioned a request for reconsideration. Moreover, counsel noted that Diann moved under K.S.A. 60-260(b)(1) and (2), "in part," begging the question: What additional statutory basis did Diann intend to invoke?

Had this been Diann's lone filing, her trial counsel's unexplained and surprising failure to make clear Diann's intention to move under K.S.A. 2019 Supp. 60-259(f) and to expressly articulate a nexus between the motion and reconsideration of the findings and conclusions within the order of final settlement may well have proven fatal to this appeal. However, this motion was accompanied by the "Objection to Discharge of Executrix, Marilyn Lentz, and Petition to Disgorge Fees for Administration Paid to the Fiduciary." Therein, Diann was necessarily asking the court to reconsider its order of final settlement by requesting Marilyn's executor fee be disgorged to the estate. Since Marilyn took her executor's fee as a share of the limited amount of real property contained in the estate, Diann's request to disgorge Marilyn's fees required the district judge to reconsider his order of final settlement. Had Diann's requested relief been granted, disgorgement of the executor's fees would have changed the allocation of property set out in the order of final settlement. In this regard, the second motion and the relief requested therein were consistent with the purpose of K.S.A. 2019 Supp. 60-259(f) "'to allow the trial judge the opportunity to correct prior errors.'" *In re Marriage of Willenberg*, 271 Kan. 906, 910, 26 P.3d 684 (2001) (quoting *Denno v. Denno*, 12 Kan. App. 2d, 499, 501, 749 P.2d 46 [1988]).

12

Independently, the timing of these motions further corroborates our conclusion that they are properly construed as motions to reconsider under K.S.A. 2019 Supp. 60-259(f). Without clear legislative guidance or established precedent differentiating a motion to reconsider under K.S.A. 2019 Supp. 60-259(f) from a motion for relief from judgment under K.S.A. 2019 Supp. 60-260(b), we look to federal and other state courts for guidance. Examination of the federal framework before and after 1993 rule amendments is particularly instructive. Kansas' current statutory scheme tolling the time to appeal upon the filing of certain motions, reflected at K.S.A. 2019 Supp. 60-259, K.S.A. 2019 Supp. 60-260, and K.S.A. 2019 Supp. 60-2103(a), is identical to the pre-1993 federal framework. A motion under Fed. R. Civ. Proc. 59(e) is a motion to alter or amend a judgment. A motion under Fed. R. Civ. Proc. 60(b) is a motion for relief from judgment. And like K.S.A. 2019 Supp. 60-2103, Fed. R. App. Proc. 4(a) establishes the time for filing notices of appeal and tolls this deadline upon the filing of designated motions in federal court.

Before 1993, federal courts placed significant weight on the time of the motion's filing when determining whether to characterize a posttrial motion under Rule 59(e) or, instead, Rule 60(b):

> "Before 1993, a motion under Federal Rule of Civil Procedure 59(e) tolled the time for filing an appeal, but a motion under Rule 60(b) did not. *See Jennings v. Rivers*, 394 F.3d 850, 855 n. 4 (10th Cir. 2005). Thus, an appeal from the denial of a motion under Rule 59(e) encompassed review of the underlying judgment, but an appeal from the denial of a Rule 60(b) motion did not, of its own force, allow for appellate review of the underlying judgment. *Id.* In the interest of avoiding disputes over appealability, [federal courts] generally construed any post-judgment motion filed within [the time provided by rule in which to file a motion to alter or amend a judgment] as a motion under Rule 59(e). *See, e.g., Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993)." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008).

This time of filing rule was motivated by the courts' interests in preserving appellate jurisdiction and deciding cases on their merits. *Jennings v. Rivers*, 394 F.3d 850, 855 (10th Cir. 2005). However, as part of the 1993 rule amendments, Fed. R. App. Proc. 4(a)(4)(A)(vi) was amended to add Rule 60(b) motions to those designated motions automatically tolling the time for filing an appeal. 394 F.3d at 855 n.4. Once the amendments were effective, timely filed motions under both Rule 59(e) and Rule 60(b) tolled the deadline for appeal. Thus, the 1993 amendments eliminated "the need to characterize post-judgment motions according to their timing" because the motion tolled the time for appeal whether characterized under Rule 59(e) or Rule 60(b). *Obriecht*, 517 F.3d at 493.

Because Kansas' rules are identical to the pre-1993 Federal Rules, we find federal decisions construing the pre-1993 federal framework to be persuasive authority. *Fredricks v. Foltz*, 221 Kan. 28, 30, 557 P.2d 1252 (1976) (finding federal interpretations persuasive where state and federal rules similar). And this persuasive authority instructs that a posttrial motion is properly construed as a motion to alter or amend judgment when timely filed under K.S.A. 2019 Supp. 60-259(f). See, e.g., *Desta v. Ashcroft*, 329 F.3d 1179, 1183 (10th Cir. 2003); *Computerized Thermal v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002); *Wright ex rel. Trust Co. of Kansas v. Abbott Labs.,* 259 F.3d 1226, 1232-33 (10th Cir. 2001); *Phelps v. Hamilton*, 122 F.3d 1309, 1323 (10th Cir. 1997); *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir. 1997); *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995); *Buchanan v. Sherrill*, 51 F.3d 227, 230 (10th Cir. 1995). Here, Diann filed her motions within the statutory time frame for a motion to alter or amend a judgment under K.S.A. 2019 Supp. 60-259(f). Therefore, we conclude the timing, coupled with the content of her motions, support their construction under K.S.A. 2019 Supp. 60-259(f).

This is not to suggest any posttrial motion filed within 28 days of final judgment must automatically be construed under K.S.A. 2019 Supp. 60-259(f), regardless of its content. For example, the Seventh Circuit Court of Appeals has long refused to construe bare-bones posttrial motions under Rule 59(e) where they fail to satisfy the particularity-in-pleading requirement of Fed. R. Civ. Proc. 7(b)(1). *Martinez v. Trainor*, 556 F.2d 818, 819-21 (7th Cir. 1977). The Seventh Circuit continues to apply this principle to truly bare-bones motions that are "*completely* devoid of substance." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). However, in *Carlson*, the Seventh Circuit explained that Rule 59(e) motions that identify a single identifiable reason for reconsidering the judgment, regardless of the reason's merit, should toll the time to appeal, because to hold otherwise "would create troublesome uncertainty about when a notice of appeal must be filed and would invite sterile litigation over when unsuccessful motions to reconsider were too weak to toll the time to appeal." 758 F.3d at 826.

We are persuaded by the rationale of the Seventh Circuit in *Carlson*. As such, where, as here, a motion is timely under K.S.A. 2019 Supp. 60-259(f), not completely devoid of substance, and offers at least some identifiable reason for reconsidering the judgment, it is properly construed as a motion to reconsider under K.S.A. 2019 Supp. 60-259(f).

This approach better promotes the goal of securing justice in every proceeding, while avoiding a flood of litigation regarding the adequacy of counsel's posttrial motion drafting. Indeed, this rule is consistent with our precedent favoring constructions that result in adjudication on the merits. Marilyn and Lana are correct that this court has long held that "[t]he substance of a motion, rather than the title, will generally determine its character." *Gilley v. Farmer*, 207 Kan. 536, 540, 485 P.2d 1284 (1971). Yet, we have also made clear that "[a]lthough adherence to 60-2103 is necessary to confer jurisdiction upon the appellate courts, when 'there is a valid controversy whether the statutory requirements have been complied with, we are required to construe those statutes

15

liberally to assure justice in every proceeding."' *Mundy v. State*, 307 Kan. 280, 290-91, 408 P.3d 965 (2018) (quoting *State v. Griffen*, 241 Kan. 68, 70, 734 P.2d 1089 [1987]). In other words, when there is a genuine question as to whether jurisdiction exists, we err toward reaching the merits of the case.

For instance, in *Honeycutt*, 251 Kan. at 460, this court observed "[a] motion for reconsideration is considered a motion to alter or amend a judgment" under K.S.A. 60-259, citing *Heim v. Werth*, 214 Kan. 855, 857, 522 P.2d 389 (1974). *Honeycutt* then held a notice of appeal filed before entry of final judgment could ripen into a timely notice of appeal once final judgment was entered. *Honeycutt*, 251 Kan. at 462. The holding was influenced, in part, by the preference to decide issues on their merits:

> "[T]he judicial system should offer inexpensive and speedy justice to the citizens of this state and give a liberal construction to the statutes in order to insure that cases are decided on their merits and not to deny a party his or her day in court if the other party to the litigation has not been prejudiced. It eliminates a trap that attorneys and the ever-increasing number of pro se litigants frequently fall into, costing litigants their day in court on the merits of the case." 251 Kan. at 461-62.

In reaching our decision today, we again echo *Honeycutt*'s emphasis on the need for "inexpensive and speedy justice" and for consideration of cases on their merits where reasonable constructions support a finding of jurisdiction.

Here, Diann's motions were not bare-bones filings. Her "Objection to Discharge of Executrix, Marilyn Lentz, and Petition to Disgorge Fees for Administration Paid to the Fiduciary" offered at least one basis for the trial court to reconsider its order of final settlement. The caption of the motions suggested Diann sought reconsideration, and both motions were timely filed under K.S.A. 2019 Supp. 60-259(f). Under these circumstances, the motions are properly construed as motions to reconsider under K.S.A.

2019 Supp. 60-259(f), tolling Diann's deadline to file a notice of appeal. In turn, Diann's notice of appeal was timely, and the Court of Appeals has jurisdiction over the appeal.

Finally, we would be remiss not to mention the role trial counsel played in this dispute. Had Diann's trial counsel expressly declared her intention to move under K.S.A. 60-259(f), in addition to K.S.A. 60-260(b), and more clearly articulated Diann's basis or grounds for reconsidering findings and conclusions within the order of final settlement, this entire jurisdictional dispute would likely have been avoided. Indeed, counsel commonly invoke both statutory provisions in posttrial motions—a practice dictated by prudence and diligence. Unfortunately, it was not a course chosen by Diann's trial counsel in this case, forcing the Court of Appeals panel and our court to embark on a complex statutory analysis to address the question of jurisdiction in this proceeding. This case provides a textbook example of how diligent lawyering can avoid unnecessary and potentially devastating procedural and jurisdictional challenges that threaten to eviscerate the substantive rights of parties on appeal.

*The issue of substantial competent evidence is not before us.*

Having decided that the Court of Appeals had jurisdiction to consider Diann's appeal, we next remand to the Court of Appeals for consideration of the substantial competent evidence issue Diann raised in her brief. The Court of Appeals opined below that "[e]ven if we were to find that proper jurisdiction existed to hear this appeal, we have determined that the issues raised by Diann lack merit and should not be addressed by us in this appeal." *Lentz*, 2019 WL 494098, at *8. This declaration was couched in a hypothetical: "Even if we were to find." This hypothetical necessarily means that the panel did not actually "decide" the substantial competent evidence issue because the panel had already found it lacked jurisdiction.

17

Kansas Supreme Court Rule 8.03(i)(1) (2020 Kan. S. Ct. R. 57) provides that—in cases such as this one where we do not restrict our grant of review—"the issues before the Supreme Court include all issues properly before the Court of Appeals that the petition for review, cross-petition, or conditional cross-petition allege *were decided erroneously* by the Court of Appeals or warrant review for other reasons." (Emphasis added). And Rule 8.03(j)(5) (2020 Kan. S. Ct. R. 58) provides that:

> "If issues decided by the district court were presented to, but not decided by, the Court of Appeals and review of those issues was preserved, the Supreme Court may consider and decide the issues, remand the appeal to the Court of Appeals for decision of the issues, or dispose of the issues as it deems appropriate."

Here, the Court of Appeals did not properly decide the substantial competent evidence issue because it had already determined it was without jurisdiction. When the Court of Appeals finds it lacks jurisdiction over a case, it must dismiss the appeal. See *Kaelter v. Sokol*, 301 Kan. 247, Syl. ¶ 1, 340 P.3d 1210 (2015). And once a Court of Appeals panel concludes jurisdiction is lacking, the better practice is not to proceed to opine about the merits of the issues.

We therefore remand to the Court of Appeals for consideration of Diann's appeal on the merits.

BEIER, ROSEN, and WILSON, JJ., not participating.
MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 118,307 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

JEFFREY R. ELDER, District Judge, assigned.[2]

WILLIAM MAHONEY, District Judge, assigned.[3]

* * *

LUCKERT, C.J., concurring:  I agree with the majority's holding but write separately to add to the last sentence of the majority opinion. In that sentence, the majority writes that "once a Court of Appeals panel concludes jurisdiction is lacking, the better practice is not to proceed to opine about the merits of the issues." In my view, once the Court of Appeals determined it lacked jurisdiction, it not only deviated from best practices, it erred by discussing the merits. I would hold that given that error and the extrajudicial nature of the rest of the opinion, this case must be assigned to a different panel on remand.

Essentially, the Court of Appeals, by proceeding to the merits after determining it lacked jurisdiction, acted under a concept of hypothetical jurisdiction. Our United States Supreme Court has condemned that practice, noting it "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94,

---

[2]**REPORTER'S NOTE:**  District Judge Elder was appointed to hear case No. 118,307 vice Justice Rosen under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

[3]**REPORTER'S NOTE:**  District Judge Mahoney was appointed to hear case No. 118,307 vice Justice Wilson under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). To avoid that threat, courts follow a horizontal sequencing of issues under which "the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes." *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453, 20 S. Ct. 690, 44 L. Ed. 842 (1900). Moving to merits without that determination or after determining jurisdiction does not exist results in an advisory opinion and the court acting ultra vires, unless dismissal is otherwise warranted and jurisdiction "is difficult to determine." See *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (recognizing appropriateness of forum non conveniens dismissal where subject-matter or personal jurisdiction is difficult to determine); *Steel Co.*, 523 U.S. at 101-02 (court acts ultra vires by considering merits under hypothetical jurisdiction analysis).

As the United States Supreme Court has noted, the requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884). "Much more than legal niceties are at stake here. The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Steel Co.*, 523 U.S. at 101.

Likewise, the judicial power of Kansas courts rests on the court having jurisdiction. "The judicial power granted by Article 3 of the Kansas Constitution does not include the power to give advisory opinions. A Kansas court issuing an advisory opinion would violate the separation of powers doctrine by exceeding its constitutional authority." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008).

The concept that a court consider jurisdiction as an antecedent to a merits determination has a practical impact in a system driven by stare decisis principles because even dicta or obiter dictum "should not be lightly disregarded" by lower courts. *Jamerson v. Heimgartner*, 304 Kan. 678, 686, 372 P.3d 1236 (2016). As a consequence of this principle, when a Court of Appeals panel assumes jurisdiction in an effort to efficiently expend judicial resources, it may actually cost resources because that dicta may underlie a petition for review and may present this court the dilemma of whether to address and correct an error even if it does not impact the outcome of a case. The horizontal sequencing of issues in decision making also "influences the parties' behavior in litigation, the incentives they have to settle, and the development of the law" as well as "the outcomes of future cases." Steinman, *Appellate Courts as First Responders: The Constitutionality and Propriety of Appellate Courts' Resolving Issues in the First Instance*, 87 Notre Dame L. Rev. 1521, 1535-36 (2012); see Rutledge, *Decisional Sequencing*, 62 Ala. L. Rev. 1, 7 (2010) ("the order in which courts decide issues has a significant and underappreciated impact on the law").

Simply put, one of the fundamental concepts of the rule of law is that courts should not opine on issues over which they lack jurisdiction. By having done so, the panel arguably tilted the playing field. As a result, I would order that a new panel be appointed to resolve the issues hypothetically considered by the previous panel.

BILES and STEGALL, JJ., join the foregoing concurrence.

21