NOT DESIGNATED FOR PUBLICATION

No. 126,299

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRENT L. ALFORD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Submitted without oral argument. Opinion filed July 12, 2024. Affirmed.

*Brent L. Alford*, appellant pro se.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before WARNER, P.J., ATCHESON and BRUNS, JJ.


PER CURIAM: In 1993, Brent Alford was convicted of multiple crimes and was ordered to serve two consecutive life sentences. After unsuccessfully appealing his convictions and sentences to the Kansas Supreme Court, Alford filed a habeas motion under K.S.A. 60-1507 in 1997, and the district court summarily denied that motion a few months later. Alford then filed a motion to reconsider that denial—a motion that was not ruled upon for more than 24 years.

Alford claims that this delay means he should now be allowed to appeal the denial of his original K.S.A. 60-1507 motion. The State responds that Alford effectively abandoned his motion to reconsider and should not be allowed to appeal the district court's 1998 ruling. After careful review of the record and the parties' arguments, we appreciate the State's concerns. But based on the unique circumstances of this case, we decide to review the district court's denial of Alford's original K.S.A. 60-1507 motion as part of this appeal. We conclude that the district court did not err in summarily denying Alford's habeas motion, and we find no error in the district court's most recent denial of Alford's motion for reconsideration. Thus—through twists befitting this case's procedural history—we affirm the district court's ruling that Alford is not entitled to relief.

FACTUAL AND PROCEDURAL BACKGROUND

Alford was convicted in 1993 of first-degree murder, aggravated kidnapping, and unlawful possession of a firearm, all associated with the kidnapping and killing of his former girlfriend, Kim Jackson. Alford and Jackson had been in a dysfunctional and often abusive relationship for years, but the events that resulted in Jackson's death took place at a fast-food restaurant where she worked and were witnessed by Jackson's coworkers. The district court sentenced Alford to life imprisonment without the possibility of parole for 40 years (a hard 40 sentence) for the murder conviction and a controlling life sentence for the remaining crimes, to be served consecutively.

The Kansas Supreme Court affirmed Alford's convictions and sentences on direct appeal. *State v. Alford*, 257 Kan. 830, 843, 896 P.2d 1059 (1995). There, Alford argued that there was not sufficient evidence to support the finding—necessary for imposing a hard 40 sentence—that the murder was carried out in a particularly heinous, atrocious, or cruel manner; he also challenged the district court's instructions to the jury on that question. The *Alford* court found neither argument persuasive. 257 Kan. at 838, 840.

2

The Kansas Supreme Court also rejected Alford's claim that the district court erred when it admitted a written statement by Jackson describing a previous beating by Alford. Though Alford did not object to the admission of this statement at trial, and so the issue was not preserved for appeal, the court nevertheless reached the merits of Alford's claim and found that the statement was admissible. 257 Kan. at 840. The court explained that the statement was not being offered as hearsay—to "prove the truth of the matter asserted"—but to show the couple's discordant relationship, which was relevant to prove Alford's motive and intent. 257 Kan. at 840.

*Alford's First K.S.A. 60-1507 Motion*

After his unsuccessful direct appeal, Alford filed a K.S.A. 60-1507 motion in December 1997. He alleged that he should receive a new trial for four reasons:

- Alford alleged his convictions for aggravated kidnapping and first-degree murder were multiplicitous, as the same set of actions—the trapping and shooting of the victim—formed the basis for both crimes. Alford argued that his conviction for aggravated kidnapping was "merely incidental to the homicide."

- Alford argued that the introduction of Jackson's written statement violated his right under the Sixth Amendment to the United States Constitution to confront witnesses. Alford argued the district court erred in admitting the statement—which he again claimed was hearsay—without first making findings regarding its reliability (the test then used under the Confrontation Clause). Alford asserted that he "fe[lt] the Judge err[ed] in admitting the written statement."

- Alford claimed that the district court abused its discretion in instructing the jury about the requirements for a hard 40 sentence and in ultimately imposing that sentence. He asserted that the district court should have explained its reasons for

3

ordering the hard 40 sentence on the record, rather than merely imposing it in light of the jury's finding that Alford committed the murder in a particularly heinous, atrocious, or cruel manner. And he again asserted that the court's instructions to the jury were insufficient on that point.

- Alford claimed that his trial attorney provided ineffective representation in three respects—in not objecting to the jury instructions regarding the appropriateness of the hard 40 sentence, in not requesting a jury instruction for a lesser included offense of kidnapping, and in not objecting to the admission of the victim's written statement "to keep the issue open for appeal."

The district court summarily denied Alford's K.S.A. 60-1507 motion without an evidentiary hearing. The court found that the first three issues had been considered and resolved against Alford by the Kansas Supreme Court in his direct appeal. And the district court found that Alford's claim for ineffective assistance of counsel was precluded by the Supreme Court's findings. In particular, the district court noted that despite the absence of a contemporaneous objection to the admission of Jackson's written statement, the Supreme Court had considered Alford's claim and found the statement admissible. Thus, Alford could not show that his trial attorney's failure to object to the statement's admission prejudiced his ability to present the issue on appeal.

*Alford's Post-Dismissal Filings*

After the district court denied his K.S.A. 60-1507 motion, Alford simultaneously filed two documents in the district court—a timely notice of appeal and a separate motion to reconsider the summary denial of his habeas motion. The motion to reconsider reiterated each of the arguments in Alford's K.S.A. 60-1507 motion, but it added no new facts or law to what had already been presented.

Over two years passed. During that time, Alford did not perfect his appeal by filing a docketing statement with the appellate court, and the district court did not issue a ruling on Alford's motion to reconsider.

In 2000, the State moved to dismiss Alford's appeal, arguing he had failed to timely docket it in accordance with Kansas Supreme Court rules. Alford responded to the State's motion in a letter to the district court, explaining that he had tried to perfect his appeal in 1998 but he had mistakenly sent the docketing statement to the district court rather than the appellate court. His letter did not argue that the district court must first rule on his 1998 motion to reconsider or assert that he was waiting to perfect his appeal until after the district court had done so. In fact, the letter did not mention the 1998 motion to reconsider at all.

The district court dismissed his appeal "pursuant to Supreme Court Rule No. 5.051" based on Alford's "failure to docket his appeal in a timely manner." Following this dismissal, Alford did not object to the district court's order or appeal it, nor did he ask the appellate courts to reinstate his appeal.

*Subsequent K.S.A. 60-1507 Motions and Other Filings*

Alford filed a second K.S.A. 60-1507 motion in 2007. *Alford v. State*, No. 101,276, 2010 WL 174001 (Kan. App. 2010) (unpublished opinion), *rev. denied* March 31, 2010. This motion, which asserted claims of ineffective assistance of counsel, did not mention the pending motion to reconsider from 1998. Although the district court initially scheduled an evidentiary hearing on Alford's motion, it later summarily denied the motion as untimely and successive. This court affirmed the district court's ruling on appeal. 2010 WL 174001, at *4.

Seven years later, in 2014, Alford filed with the district court a motion to reinstate the appeal of his first K.S.A. 60-1507 motion. This was the first time Alford argued that the district court had erred by dismissing his appeal without first ruling on his 1998 motion to reconsider.

The district court declined Alford's request. The court found that "to the extent that [Alford] is requesting a ruling on his motion to reconsider from 1998, this court declines to enter a ruling on the merits" because Alford had failed "to pursue any closure on the issue in the 14 years since his appeal was dismissed in August 2000." The court noted that rather than pursue relief on his motion to reconsider or attempt to reinstate his appeal in 2000, Alford "turned his attention" to his second K.S.A. 60-1507 motion. Thus, the district court found, based on the lengthy delay in bringing the issue to the court's attention, that Alford had waived the ability to make this argument.

A panel of this court affirmed the district court's order using a different rationale. *Alford v. State*, No. 114,852, 2017 WL 2403121 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 986 (2018). It found the district court lacked jurisdiction to reinstate Alford's appeal because the motion was untimely—made over 14 years after the district court dismissed his notice of appeal—and had been improperly filed with the district court rather than the appellate court. 2017 WL 2403121, at *3. The Kansas Supreme Court denied Alford's petition for review, and the mandate issued in March 2018.

*Alford's Present Motion*

In February 2021, Alford filed the motion with the district court that is now before us—a motion he labeled a request for an "emergency writ of mandamus." Alford sought to "compel" the district court to rule on his 1998 motion to reconsider "in order to commence his time to appeal and, thus, endow the appellate courts with jurisdiction over his [K.S.A.] 60-1507 matter." The State responded that Alford's current request was filed

6

years too late. It asserted that for at least 14 years—between 2000 and 2014—Alford had acted as though his first K.S.A. 60-1507 motion and his motion to reconsider the denial of that motion were resolved.

The district court ordered the State to file a response to Alford's 1998 motion to reconsider. The State did so, noting that the motion to reconsider merely reiterated the arguments in Alford's original K.S.A. 60-1507 motion and did not explain any new facts, evidence, or arguments as to why he was entitled to relief. Alford then filed several additional pro se motions and requests, but none of these are before us.

After considering the parties' arguments and filings, the district court denied Alford's motion. The court noted that Alford "has still never provided justification or explanation for his decades delay in pursuing his motion to reconsider." Despite this delay, however, the court effectively denied that motion, finding nothing in Alford's motion warranted reconsideration of the district court's earlier dismissal of his first K.S.A. 60-1507 motion:

> "The motion to reconsider does not set forth any new facts, evidence, or arguments. It merely recycles the same points made in movant's original 60-1507 motion. Thus, the court's ruling that three of the issues were raised on direct appeal and therefore barred by res judicata does not change. Likewise, the claim of ineffective assistance of counsel still fails because counsel cannot be ineffective for failing to object to the admission of a statement that is legally admissible. There is no reason to believe that had the court timely issued a ruling on the motion that the court would have reversed its earlier ruling."

In the end, the district court concluded that it was Alford's "own inaction that thwarted his opportunity" to appeal the denial of his original K.S.A. 60-1507 motion. Thus, the court denied Alford's request for relief. Alford appeals.

DISCUSSION

Alford asserts the district court erred in denying his most recent motion. He argues that the district court should have outright ruled on the 1998 motion to reconsider, which would then have allowed Alford to appeal the denial of his first K.S.A. 60-1507 motion. Alford also argues that the district court should have granted his first K.S.A. 60-1507 motion and discusses the four claims he raised there in extensive detail.

In Kansas, the right to appeal is governed by statute and subject to jurisdictional time limits. *In re Estate of Butler*, 301 Kan. 385, 390, 343 P.3d 85 (2015). Habeas corpus motions under K.S.A. 60-1507 are civil actions. Thus, as in other civil actions, a person who wishes to appeal an adverse judgment must file a notice of appeal within 30 days from the entry of judgment. K.S.A. 2023 Supp. 60-2103(a). That time frame is terminated if the person files a timely motion to reconsider the court's ultimate ruling—what we more formally refer to as a motion to alter or amend the judgment under K.S.A. 60-259(f). See K.S.A. 2023 Supp. 60-2103(a); *In re Estate of Lentz*, 312 Kan. 490, 497, 476 P.3d 1151 (2020) (Kansas courts treat a motion to reconsider as a motion to alter or amend the judgment). Once that timely filed postjudgment motion is resolved, the time to file an appeal begins to run again. K.S.A. 2023 Supp. 60-2103(a).

The statutory time frame for filing a motion under K.S.A. 60-259(f) has changed during the 26 years since Alford filed his postjudgment motion in 1998. Today, litigants must file such a motion within 28 days of the entry of judgment, while litigants in 1998 had only 10 days to file that request. Compare K.S.A. 2023 Supp. 60-259(f) with K.S.A. 60-259(f) (Furse 1994). Regardless, there is no question that Alford filed his motion to reconsider within the required statutory timeframe. It is likewise undisputed that the district court did not enter a written ruling on that postjudgment motion until 2022. The issue is whether Alford effectively abandoned that motion through more than a decade of inaction—as the district court found—or whether Alford should be allowed to appeal the

8

denial of his original K.S.A. 60-1507 motion because the most recent ruling by the district court was the first time this postjudgment motion had been resolved.

But before turning to that question, we address the elephant in the room—the district court's dismissal of Alford's notice of appeal in 2000. Alford had filed this notice of appeal the same day that he filed his timely K.S.A. 60-259(f) motion. Although the procedure used by Alford understandably created confusion, Alford's postjudgment motion tolled the timeframe for filing a notice of appeal, rendering his notice premature. Generally, courts treat premature notices as lying dormant until the entry of an appealable judgment, whereupon the notice becomes effective. See *Honeycutt v. City of Wichita*, 251 Kan. 451, 462, 836 P.2d 1128 (1992); Supreme Court Rule 2.03(a) (2024 Kan. S. Ct. R. at 14). Here, the district court dismissed the premature notice of appeal, and Alford did not request reinstatement of that notice by the appellate courts. See Supreme Court Rule 5.051 (2024 Kan. S. Ct. R. at 33). As we noted in our previous decision, Alford's efforts to reinstate that appeal in 2014 were faulty in multiple respects. See generally *Alford*, 2017 WL 2403121 (explaining these procedural shortcomings).

But the fact that Alford's premature notice of appeal was dismissed does not mean that the timeframe for filing an appeal had expired if his postjudgment motion was still live and pending. We consider that question now.

1. *Alford has not explained his delay in seeking a ruling on his K.S.A. 60-259(f) motion.*

The district court found that Alford's postjudgment motion to reconsider was no longer pending, as Alford had effectively abandoned that motion through his inaction—he filed the motion in 1998, and his next effort to request a ruling on that motion was in 2014. The court noted that Alford had provided no explanation for this delay and had taken several actions in the interim that showed he was no longer seeking postjudgment

9

relief. Alternatively, the court found that Alford's motion to reconsider did not entitle him to relief; it only reiterated the unsuccessful claims from his first K.S.A. 60-1507 motion.

We begin by noting that the record supports the district court's observation that Alford never brought the pending motion to reconsider to the court's attention. Alford filed his K.S.A. 60-259(f) motion in 1998 on the same day he filed his notice of appeal. When the State moved to dismiss his notice of appeal, Alford did not argue that the court still needed to rule on his outstanding motion to reconsider. Nor did he argue—as he does now—that he had been waiting to perfect his appeal until after the district court had ruled on it. Instead, he explained that he had tried to docket his appeal, but he had mistakenly sent the docketing statement to the district court rather than the appellate court.

After the notice of appeal was dismissed in 2000, Alford did not object to or appeal the order dismissing his appeal, nor did he seek to reinstate his appeal through Supreme Court Rule 5.051. In the seven years following, Alford did not pursue any type of postjudgment relief. His second K.S.A. 60-1507 motion, filed in 2007, did not mention the pending motion to reconsider. It was not until 2014—16 years after Alford filed his K.S.A. 60-259(f) motion—that he raised the question of whether that motion had ever been resolved.

Alford has never provided an explanation for this delay. Instead, he asserts that he has no responsibility to ensure that the district court rules on a motion that has otherwise been timely filed. He claims that by declining to consider and rule on his motion, the district court has denied him due process of law.

We note that, contrary to Alford's assertions on appeal, a person seeking relief under K.S.A. 60-1507 has the burden to demonstrate their claims warrant an evidentiary hearing. See *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). The mere filing of a request for relief does not shift that burden to the court. This principle is not limited to the

10

habeas context. For example, courts may dismiss civil cases for want of prosecution if the plaintiff does not continue diligently pursuing the claims in a petition. See K.S.A. 2023 Supp. 60-241(b). Thus, we disagree with Alford's assertion that he had no responsibility to pursue a ruling on his K.S.A. 60-259(f) motion.

But this is an unusual case. Since 2014, Alford has filed myriad motions seeking an appeal of his first K.S.A. 60-1507 motion. Courts have repeatedly found that the procedures he pursued were not the correct avenues for seeking the relief he sought. These rulings have not assuaged Alford's concerns but have only led to more numerous filings. (While this appeal has been docketed, Alford has filed two motions and several notices of additional authority that do not comply with Supreme Court Rule 6.09 [2024 Kan. S. Ct. R. at 40] but instead seek to reiterate his position.)

There is no question that the district court did not—before its most recent ruling now subject to this appeal—explicitly rule on Alford's postjudgment motion. The State points to no reason why it would be prejudiced if we were to consider the merits of Alford's claims in his original K.S.A. 60-1507 motion and K.S.A. 60-259(f) motion at this point; it continues to assert that the claims raised by Alford's motions were conclusively resolved by the Kansas Supreme Court's decision on direct appeal.

And now, for the first time, the district court has explicitly ruled that Alford's K.S.A. 60-259(f) motion lacked merit. Alford has appealed the district court's ruling and has chosen to provide voluminous briefing as to why he believes his first K.S.A. 60-1507 motion should not have been denied. The State's position is clear. Under these unique circumstances, we find that the more efficient and effective course is to turn to the district court's alternative ruling and consider the merits of Alford's K.S.A. 60-1507 motion and K.S.A. 60-259(f) motion now—effectively granting him the appeal he has sought.

11

2. *The district court did not err in denying Alford's original K.S.A. 60-1507 motion.*

The district court denied Alford's original K.S.A. 60-1507 motion in 1998 without an evidentiary hearing, finding that a review of the motion, court files, and records in the case conclusively showed that Alford was not entitled to relief. K.S.A. 60-1507(f) (Furse 1994). Because the district court denied Alford's motion based on the court record and without an evidentiary hearing, this court is in essentially the same position that the district court was (albeit significantly more remote in time from Alford's trial); thus, our review is unlimited. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007).

To start, we agree with the district court's conclusion that Alford's K.S.A. 60-259(f) motion only reiterated his claims in his original K.S.A. 60-1507 motion. The motion to reconsider did not point to any additional facts or legal authority that the district court should have considered; it merely asserted that the district court reached the wrong conclusion on each claim. Thus, our review of the motion to reconsider is effectively subsumed by our analysis of Alford's claims in his habeas motion.

Alford's motions asserted four claims. He argued that his convictions for aggravated battery and first-degree murder were multiplicitous; that the district court's admission of Jackson's written statement violated the Confrontation Clause; that the court erred in instructing the jurors on the law relating to the aggravating factors necessary to impose a hard 40 sentence and erred in imposing the hard 40 sentence; and that Alford received ineffective assistance of counsel. We review each of those claims now.

2.1. *Alford's first three claims allege trial errors that should have been raised on direct appeal; Alford has not provided any explanation for why they may be considered in a K.S.A. 60-1507 motion.*

The State argues—and the district court found—that Alford's first three claims had been resolved by the Kansas Supreme Court in its decision on direct appeal. This

12

conclusion is partially true. More accurately, those claims involve trial matters that either were or could have been presented during Alford's direct appeal. Either way, Alford has not demonstrated that they may be considered in a K.S.A. 60-1507 motion.

Alford's first two claims—his multiplicity argument and his Confrontation Clause challenge—were not raised in his direct appeal to the Kansas Supreme Court. But these arguments both allege trial errors that *could have been raised* during his direct appeal. Accord *State v. Johnson*, 269 Kan. 594, 601, 7 P.3d 294 (2000) (direct appeal precludes later review of "issues that could have been presented, but were not presented" in the earlier case). It is well settled that a movant may not use a K.S.A. 60-1507 proceeding as a vehicle for obtaining review of mere trial errors that could have been raised on direct appeal unless the trial error affects the movant's constitutional rights and the movant demonstrates exceptional circumstances excusing the failure to appeal. *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009); Supreme Court Rule 183(c)(3) (2024 Kan. S. Ct. R. at 240-41).

First considering Alford's multiplicity argument, a panel of this court recently found that a near-identical argument in a habeas motion concerning convictions of attempted first-degree murder and aggravated kidnapping raised "trial errors that should have been argued on direct appeal." *Kane v. State*, No. 124,857, 2023 WL 8294936, at *6 (Kan. App. 2023) (unpublished opinion), *petition for rev. filed* December 22, 2023. We agree. Alford offers no explanation as to why his multiplicity argument could not have been raised during his direct appeal. Alford has not shown that the district court erred in denying this claim.

Our review of Alford's claim that the district court's admission of Jackson's written statement at trial violated his confrontation rights reaches the same conclusion. Challenges to the admission of evidence—including constitutional challenges under the Confrontation Clause—are quintessential trial matters that must be raised on direct

appeal. See *Stano v. State*, No. 103,571, 2011 WL 781554, at * (Kan. App.), *rev. denied* 293 Kan. 1108 (2011). In his direct appeal, Alford raised a hearsay challenge to the admission of the written statement, but he never asserted a confrontation challenge. He provides no reason for this omission, beyond perhaps a generous reading of his claim for ineffective assistance of counsel, which we discuss later. To the extent Alford challenges the district court's admission of that evidence at trial, this claim should have been presented during his direct appeal and cannot be presented in a K.S.A. 60-1507 motion.

Finally, the district court noted—and we agree—that the Kansas Supreme Court directly addressed Alford's claims relating to his hard 40 sentence during his direct appeal and found no error. The *Alford* court rejected Alford's instructional argument, finding he was merely seeking to add a clarifying instruction in a procedural manner that had been previously rejected by Supreme Court precedent. *Alford*, 257 Kan. at 838-40. And the court found no error in imposing the hard 40 sentence because "the jury's determination that the murder was committed in an especially heinous, atrocious, or cruel manner is supported by [the evidence submitted at trial]." 257 Kan. at 838. Alford is bound by these rulings and cannot challenge them by way of a K.S.A. 60-1507 motion.

Thus, we agree with the district court's decision in 1998 and in its most recent decision denying Alford's K.S.A. 60-259(f) motion that Alford's first three claims are not proper for a K.S.A. 60-1507 motion. Those claims either were raised or should have been raised in Alford's direct appeal, and Alford provided no exceptional circumstances that would warrant habeas review. Summary denial was appropriate.

2.2.    *Alford has not shown that the outcome of his trial would have been different if his trial attorney represented him differently.*

Lastly, we turn to Alford's claim that his convictions resulted from the ineffective assistance of trial counsel. Alford's original K.S.A. 60-1507 motion alleged that his trial

14

attorney provided constitutionally deficient representation in three respects—in not objecting to the jury instructions regarding the appropriateness of the hard 40 sentence, in not requesting an instruction on simple kidnapping, and in not objecting to the admission of Jackson's written statement "to keep the issue open for appeal."

The Sixth Amendment to the United States Constitution guarantees criminal defendants "the Assistance of Counsel" for their defense. U.S. Const. amend. VI. This assistance must be "reasonably effective," because the failure to provide effective assistance of counsel deprives a defendant of a fair trial in violation of the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 683, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To determine whether an attorney has provided ineffective assistance of counsel, courts examine whether the attorney's representation was deficient and whether any constitutionally defective representation prejudiced the defendant. 466 U.S. at 687. That is, the defendant must show (1) the attorney's actions were objectively unreasonable under the totality of the circumstances, and (2) but for those actions, there is a reasonable probability that the outcome would have been different. 466 U.S. at 688, 694; *Chamberlain v. State*, 236 Kan. 650, Syl. ¶ 3, 694 P.2d 468 (1985) (adopting *Strickland*).

We note, as the district court did, that Alford faced an uphill battle in succeeding on his ineffective-assistance claim, as at least two of Alford's contentions were essentially foreclosed by the Kansas Supreme Court's decision on direct appeal. For example:

- Alford claims his trial attorney should have objected to the jury instruction on what constitutes heinous, atrocious, or cruel conduct, pointing out that—while his case was on direct appeal—the Supreme Court grafted an addition to the pattern instruction to clarify that issue. But the Supreme Court in *Alford*'s case found the instruction used at his trial was not unconstitutionally vague. *Alford*, 257 Kan. at

15

839. And the court found that there was sufficient evidence from which a jury could find that Alford murdered the victim in an especially heinous, atrocious, or cruel manner. 257 Kan. at 838.

- Alford asserts that this attorney should have objected at trial to the admission of the Jackson's written statement, arguing that statement was inadmissible hearsay—this element was important both for a hearsay analysis and for the analysis under the Confrontation Clause in effect at Alford's trial. See *Drach v. Bruce*, 281 Kan. 1058, 1079, 136 P.3d 390 (2006). But despite the lack of objection, the Kansas Supreme Court considered the merits of Alford's hearsay claim on his direct appeal and concluded that the statement was not hearsay, as it was not being offered for the truth of the matter asserted there. *Alford*, 257 Kan. at 840.

The most fundamental flaw in Alford's various assertions regarding ineffective assistance of counsel, however, is that they focus only on the first inquiry under *Strickland*—whether the attorney's actions were defective. Alford provides no explanation as to how the outcome of his trial would have been different if his attorney had objected to the penalty instruction or admission of the written statement, or if the attorney had requested a simple kidnapping instruction. This is particularly problematic, as Alford's actions leading to his convictions took place at a fast-food restaurant while the victim was working and were witnessed by her coworkers. These eyewitnesses testified at trial and formed the heart of the State's case against Alford.

The Kansas Supreme Court summarized the witnesses' testimony surrounding Alford's murder of Jackson in its opinion:

> "The record reveals that the defendant entered the kitchen waving his gun. He chased Jackson into the lobby of the restaurant and shot her twice. He then forced Jackson back into the kitchen and when she attempted to flee, shot her again. Finally, as

16

she was barely moving yet still trying to escape, he dragged her around the corner of the kitchen, all the while attempting to fire the gun which had jammed. After a long series of clicks from the jammed gun, he administered the final two bullets. Based on these facts, the jury's determination that the murder was committed in an especially heinous, atrocious, or cruel manner is supported by substantial competent evidence." 257 Kan. at 838.

The Kansas Supreme Court also summarized the evidence supporting Alford's conviction of aggravated kidnapping:

"The record reveals that the defendant dragged Jackson back around the corner away from anyone who could intervene before administering the final shots. Jackson was still alive and moving at that time and, therefore, the murder was not complete. The testimony of Dr. Eckert established that if the fatal shot had been fired previously, Jackson would have been unconscious almost immediately. The fact that she was still moving at the time leads to the conclusion that the fatal shot came after the defendant had taken her around the corner. It would have been to the defendant's advantage to take Jackson to the back, away from any possible intervenors, while he attempted to clear his jammed gun. Under these circumstances, there is sufficient evidence for a reasonable jury to conclude that he committed the aggravated kidnapping to facilitate his commission of the crime of murder in the first degree." 257 Kan. at 842-43.

To show a reasonable probability that the outcome would have been different but for an attorney's deficient representation, there must be "'a probability sufficient to undermine confidence in the outcome.'" *Chamberlain*, 236 Kan. at 655. Even if Alford's attorney had acted as Alford claims was appropriate, the overwhelming evidence supporting Alford's convictions would not have changed. Thus, Alford's motion did not allege any facts that would show his attorney's actions affected the outcome of his trial. As such, the district court did not err when it summarily denied his claims for ineffective assistance of counsel.

Before we close, we pause to address a handful of loose ends. During the pendency of this appeal, Alford has filed several documents with the appellate courts. In a "Formal Request to Ask Appellate Court to Take Judicial Notice," Alford asked this court to take judicial notice of the notice of appeal he filed in 1998. We deny this request as unnecessary, as this document is included in the record on appeal. Alford also filed a document entitled "Jurisdiction; Interlocutory Appeal," in which he reiterated his arguments regarding the timing of his motion to reconsider and the availability of an appeal. We note this filing and have considered it in our decision. And Alford has filed several letters of additional authority, all of which we note here. Any other pending requests are denied.

In summary, the trial record and additional filings in this case conclusively demonstrate that Alford's claims in his first K.S.A. 60-1507 motion were without merit. The district court did not err when it summarily denied that motion in 1998. And the district court correctly found in its most recent order that Alford's K.S.A. 60-259(f) motion was similarly without merit.

We affirm the district court's ruling that Alford is not entitled to relief.

Affirmed.